Rita **MILLER**, Administratrix of the Estate of Clell Miller, Deceased, Plaintiff-Appellant,

v.

The **HARTFORD ACCIDENT AND INDEMNITY COMPANY**, Defendant-Appellee.

No. 74-1268.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 1974.

Decided Nov. 15, 1974.

Orville W. Nichols, Jr. and Charles W. Weaver, Knox, Ind., for plaintiff-appellant.

Arthur A. May, South Bend, Ind., for defendant-appellee.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and LAY*, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Plaintiff Rita Miller, administratrix of the estate of Clell Miller, deceased, brought this action against defendant The Hartford Accident and Indemnity Company, seeking recovery of $60,000 for uninsured motorist benefits and $2,000 accidental death benefits for the death of her husband, Clell Miller, pursuant to the terms and conditions of an automobile insurance policy issued by Hartford.

■ The action was originally filed in the Starke Circuit Court, in Starke County, Indiana. On motion of Hartford the case was transferred to the United States District Court for the Northern District of Indiana, South Bend Division. There being diversity jurisdiction pursuant to 28 U.S.C. § 1332, Indiana law governs. It is conceded that the Indiana courts have not decided the precise question presented here.

Clell Miller was killed on April 14, 1972, when operating his 1969 Oldsmobile on U. S. Highway #421 in Starke County, Indiana, as the result of a head-on collision with a 1964 Chevrolet owned and driven by Joseph F. Porterfield of Starke County. The proximate cause of the accident was the negligence of Porterfield. Miller left surviving his widow, Rita, and three minor dependent children, ages 12, 6 and 4 years. The resulting damage for the death of Miller would have exceeded the sum of $63,000. Porterfield was an uninsured motorist as defined by an Indiana statute, Ind.Code § 27–7–5–1, Ind.Ann.Stat. § 39–4310 (1973 Supp.), and by the subject insurance policy.

On the date of the accident and resulting death of Miller, Miller was insured by Hartford under one insurance policy covering three automobiles he owned, with a total premium of $164.44. In addition to the 1969 Oldsmobile Miller was driving at the time of the fatal accident, the other two vehicles covered were a 1965 Oldsmobile and a 1964 Chevrolet pick-up truck, all of which were separately listed in one of the declarations of the policy. In another section of the declarations entitled Coverages, Limits of Liability and Premi-

---

* United States Circuit Judge Donald P. Lay of the United States Court of Appeals for the Eighth Circuit is sitting by designation.

ums, Section I, there appears under Coverage C, for accidental death benefits, a limit of $1,000 for each named insured, and under Coverage D, for uninsured motorists, a limit of $20,000 for each accident. Section I coverages also include liability and medical expense. The premiums for all Section I coverages are shown to be the sum of $29.00 allocated to each of the three covered vehicles.

A similar table lists Section II coverages consisting of comprehensive and collision insurance with varying premiums allocated to each listed car. Finally, the total premium allocated for each car is indicated, all payable together in one total premium of $164.44. In short, we have one insurance policy covering three motor vehicles for one total premium, with separate allocations of premiums for each car.

In passing, it should be noted that only one accident is here involved, and Clell Miller is the only named insured. However, the policy provided under Coverage D—Uninsured Motorists, that the following are insureds: (a) the named insured and any relative, (b) any other person while occupying an insured automobile, (c) any person with respect to damages he is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under (a) or (b) above. This provision further states that the insurance afforded under Coverage D—Uninsured Motorists applies separately to each insured, but that the inclusion herein of more than one insured shall not operate to increase the applicable limit of the company's liability.

The policy contains no separability clause. Hartford has paid the $1,000 accidental death benefit for the named insured. It has tendered $20,000 for the one accident under the uninsured motorist coverage, which plaintiff rejected. Plaintiff claims that the coverages for the three automobiles should be aggregated to permit recovery of $3,000 for accidental death benefits and $60,000

under the uninsured motorist coverage. This action presents a classic case of "stacking."

Following a pre-trial conference and the closing of issues, together with the filing of certain affidavits and admissions, plaintiff moved for summary judgment. This was based upon the absence of a dispute as to any material fact and the assertion that plaintiff was entitled to judgment as a matter of law.

Supported by a full and carefully considered memorandum opinion, the trial court denied plaintiff's motion for summary judgment and dismissed the complaint with prejudice and without costs. The judgment also provided that should Hartford fail to pay plaintiff the sum of $20,000, once tendered and rejected, within thirty days, the case would be reinstated and judgment for $20,000 would be entered for plaintiff. Hartford timely paid $20,000 into the court for plaintiff, which plaintiff refused. The instant appeal resulted.

## UNINSURED MOTORIST COVERAGE

It is uncontroverted that the Section I premium allocated to uninsured motorists under Coverage D is $6.00 annually for each of the three listed cars.

The pertinent part of Coverage D— Uninsured Motorists reads:

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle;

. . .

Under the exclusions sections of the policy it is provided in relevant part that:

Regardless of the number of . . . (4) automobiles or trailers to which this policy applies, . . . (C) the limit for Coverage D—Uninsured Motorists stated in the declarations as applicable to "each accident" is the

total limit of the company's liability for all damages because of bodily injury sustained by one or more persons as the result of any one accident.

The applicable uninsured motorist statute in force in Indiana at the time the Hartford policy was issued provides:

39–4310. Motor vehicle liability— noninsured vehicle coverage—rejection in writing.—No automobile liability or motor vehicle liability policy or insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Acts 1947, Chapter 159, sec. 14 (§ 47–1057), as amended heretofore and hereafter, under policy provisions approved by the commissioner of insurance, for the protection of persons injured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

The district court found no ambiguity in the Coverage D—Uninsured Motorists provisions of the policy. To the contrary, the court found the language to be clear and unambiguous and not subject to interpretation. We agree.

The court examined the policy in the light of the requirements of the Indiana uninsured motorist statute, and found no violation of the statute in the policy terms. We agree.

The court further expressed the view that the number of cars covered by the policy or the involvement of one or more of these cars in the collision was not a condition of the coverage. Miller would have been covered by the policy if he had been driving a borrowed car or even if he had been a pedestrian, as long as the sole cause of his injury was the act of an uninsured motorist. We agree. The court noted that it had decided this precise issue in the unreported case of Rozina v. United States Fidelity and Guaranty Company, Civil No. 69 H 257 (Sept. 15, 1970). There the court held that the language of the policy was clear and did not permit the stacking of the uninsured motorist coverage.

■ The court further rejected plaintiff's claim that it was against public policy for the defendant to charge three separate premiums, one for each car insured, and that this was in violation of Indiana laws regulating insurance. We also find no merit in this contention under the facts in this case.

The crux of plaintiff's contention on the uninsured motorists coverage is that where, as here, the insurer charges a full premium ($9.00 annually) on each car, it would be unconscionable not to allow recovery based on each premium, which would mean three times the amount of recovery stated in the declarations, or $60,000. Plaintiff places great reliance upon the case of Simpson v. State Farm Mutual Automobile Insurance Co., S.D. Ind., 318 F.Supp. 1152 (1970), Honorable S. Hugh Dillin, Judge, presiding. That case is distinguishable on its facts. In *Simpson,* the plaintiff Pamela Simpson, was a minor residing in the home of her mother, Elizabeth Simpson. Elizabeth was the owner of two automobiles and carried two separate insurance policies, one on each car, with uninsured motorists coverage in each policy, as required by statute. Pamela was a passenger in a third automobile, not owned by her mother, which collided with an uninsured vehicle. Both of the Simpson insurance policies contained an "excess" clause which provided in substance that if there were other insurance covering the loss, the company would pay only the excess over any other similar insurance available to such occupant. The policy on the car in which Pamela was riding had uninsured motorist coverage and that insurance carrier had previously paid its policy limit of $10,000 under

such policy provision. It was stipulated that as a result of the accident Pamela received personal injuries in excess of $30,000. The court in *Simpson* was concerned with the validity of the "excess" clause contained in the mother's two policies. It followed the majority rule and held, in substance, that since the Indiana statute required each automobile policy of insurance to contain uninsured motorist protection, "it would be unconscionable to permit insurers to collect a premium for a coverage which they are required by statute to provide, and then to avoid payment of a loss because of language of limitation devised by themselves ["excess" insurance]." 318 F.Supp. at 1156.

The *Simpson* court, by dicta, immediately following this holding, stated: "(In the present case defendant could have written *one policy covering both of Mrs. Simpson's automobiles, as is usual, and thus cut its uninsured motorist coverage in half, had it desired to do so.* In collecting two uninsured motorist premiums it took the accompanying gamble.)" (Emphasis added.) *Id.* Judge Beamer here read this dicta to emphasize that Judge Dillin recognized the difference between the situation of having two separate policies of uninsured motorist coverage with separate premiums and having one policy covering three vehicles with separate premium allocations. We agree.

This result seems consistent with that of the Court of Appeals of Indiana, First District, in Stewart v. Jeffries, Ind.App., 309 N.E.2d 448 (1974), decided after *Simpson* and the trial of the instant case. In *Jeffries,* the court held that where a single policy of insurance covering several cars had both a limits of liability clause on uninsured motorist coverage and a separability clause applicable to that coverage, an ambiguity was created as to whether the limits of liability clause applied to each car or to the insurance contract as a whole. Resolving the ambiguity in favor of the insured, it held

that the insured was entitled to aggregate the liability limits. In the case at bar, however, there was no separability clause affecting the uninsured motorist coverage and no ambiguity in the policy coverage, and the case logically may be distinguished. The district court's use of the multiple premium factor does not violate the precedent established in *Jeffries*.

Finally, the "regardless" clause in the Limits of Liability section, to the effect that regardless of the number of automobiles to which the policy applies the limit for Coverage D—Uninsured Motorists stated in the declaration as applicable to "each accident" is limited to $20,000, appears clear and unambiguous and is valid and enforceable.

We have concluded that the district court appears to be on sound ground and in accord with the majority rule in finding in this case that plaintiff is limited in her recovery under uninsured motorists coverage in the subject policy to $20,000.

The uninsured motorist coverage question was treated at length by Judge Beamer in his unreported memorandum opinions in the instant case and in *Rozina, supra.* In a somewhat different context it was also considered by the same district court, Honorable Allen Sharp, Judge, presiding, in two recent cases now pending on appeal in our court. These are being contemporaneously decided, *viz.*: No. 74–1235, Trinity Universal Insurance Company v. Charles Capps, and No. 74–1279, Richard W. Schelfo v. Government Employees Insurance Company. In each of these two appeals, Judge Sharp, formerly a distinguished member of the Court of Appeals of Indiana, in a well considered memorandum opinion, agrees with the rationale of Judge Beamer in the instant appeal. Further, in *Simpson, supra,* Judge Dillin, in dicta, appears to follow the same course.

Based on our consideration of these cases,[1] we have concluded that the high-

1. Other cases which have reached the same results are, *inter alia*: Allstate Insurance Co. v. Schmitka, 12 Cal.App.3d 59, 90 Cal. Rptr. 399 (1970) ; Doerpinghaus v. Allstate

**16**

est courts in Indiana, if presented with this precise question, might reasonably be expected to reach a similar result.

## ACCIDENTAL DEATH BENEFITS

Hartford's subject policy provides for accidental death benefits in Coverage C. Plaintiff seeks to recover $1,000 under this provision for each car insured, or a total of $3,000. Hartford has previously paid $1,000 but declines to pay the additional $2,000. Coverage C reads:

> Coverage C—Accidental Death Benefit: The company will pay the accidental death benefit stated in the declarations in the event of the death of the named insured which shall result directly and independently of all other causes from bodily injury (other than sickness or disease or death resulting therefrom), caused by accident and sustained by the named insured while occupying an automobile or through being struck by a highway vehicle, if death occurs within 90 days of the accident.

The limit of this coverage as stated in the declaration, Section I, is "$1,000 each named insured." Clell Miller is the only "named insured" in the policy. He was killed accidentally while driving an automobile which was struck by another highway motor vehicle. This benefit has been paid.

■ The policy contains no separability clause. The declaration contains its own limitation clause. The language is clear and unambiguous. This clause needs no interpretation. No public policy is involved in this coverage. It is not required by statute or law. This is nothing more than simple accident insurance for the benefit of the named insured only. The insured voluntarily chose this coverage. He paid whatever

premium was required. We agree with the trial court that "Plaintiff has been paid the $1,000.00 benefit provided by this policy and is entitled to no more."

For the foregoing reasons the judgment appealed from is in all respects affirmed.

Affirmed.

Insurance Co., 124 Ga.App. 627, 185 S.E.2d 615 (1971) ; Otto v. Allstate Insurance Co., 2 Ill.App.3d 58, 275 N.E.2d 766 (1971) ; Arminski v. United States Fidelity & Casualty Co., 23 Mich.App. 352, 178 N.W.2d 497 (1970) ; Allstate Insurance Co. v. McHugh, 124 N.J.Super. 105, 304 A.2d 777 (1973), aff'd, 126 N.J.Super. 458, 315 A.2d 423

(1974) ; Polland v. Allstate Insurance Co., 25 App.Div.2d 16, 266 N.Y.S.2d 286 (1966) ; Castle v. United Pacific Insurance Group, 252 Or. 44, 448 P.2d 357 (1968).

In other jurisdictions are cases to the contrary which seem to represent a minority view and we do not choose to follow them.