**Mary S. LIDDY, Martin J. Liddy, Margaret Mattson, Lloyd Mattson, Defendants-Appellants,**

v.

**COMPANION INSURANCE COMPANY, Plaintiff-Appellee.**

No. 1-878A222.

Court of Appeals of Indiana, First District.

June 12, 1979.

Howard S. Young, Jr., Young & Young, Indianapolis, for defendants-appellants.

John Q. Herrin and James L. Tuohy, Wood, Tuohy, Gleason & Mercer, Indianapolis, for plaintiff-appellee.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Plaintiff Companion Insurance Company was awarded a summary judgment in its declaratory judgment suit for determination of the rights of the Plaintiff and Defendant Mary S. Liddy and other Defendants under an automobile liability insurance policy issued by Companion. Defendants appeal, challenging the trial court's interpretation of the insurance policy.

We affirm.

## FACTS

Mary S. Liddy purchased an automobile liability insurance policy from Companion Insurance Company. The policy covered two automobiles, and it contained an uninsured motorist provision.

On November 8, 1973, Liddy was injured while riding in one of her insured automobiles, a 1968 Ford. The negligence of an uninsured motorist was the proximate cause of Liddy's injuries. Liddy alleges that her damages exceed $30,000.

Companion tendered $15,000 to Mary Liddy and her husband Martin as payment in full of its liability under the uninsured motorist provision. Liddy refused to accept the $15,000 as payment in full on the ground that she had paid for uninsured motorist coverage of $30,000 per person and $60,000 for two or more persons in any one accident. Liddy made a demand for arbitration of the dispute. Companion filed an action for a declaration of the parties' rights under the insurance contract and for an injunction against arbitration of the matters in dispute. Companion maintained that its uninsured motorist liability under the contract was limited to $15,000 per person and $30,000 for two or more persons in any one accident.

The Hancock Circuit Court entered the following decree and judgment on Companion's motion for summary judgment:

## "AMENDED DECREE AND FINAL JUDGMENT

The Court at the suggestion of the Defendants amends the Decree heretofore entered on the 20th day of March, 1978, so as to enter final judgment.

The uninsured motorist coverage contained in the insurance policy involved in this case is specifically excluded from the separability clause of the policy.

The United States Circuit Court of Appeals has held that 'stacking' of uninsured motorist coverage, provided in a single policy of insurance which is applicable to multiple vehicles, will not be permitted where the separability clause of the policy does not apply to the uninsured motorist clause, even though the premiums are charged on the basis of the number of cars involved.

There is no issue of fact in this case as to the wording of the policy and therefore summary judgment is appropriate. The Plaintiffs' Motion for Summary Judgment is sustained.

The court further declares that the arbitrator does not have jurisdiction to interpret the insurance contract.

The court expressly determines that there is no just reason for delay and the court expressly enters judgment as to the above issues.

It is ordered, adjudged and declared that plaintiffs' liability to defendant Mary J. Liddy, pursuant to the uninsured motorist clause of the policy in this case is limited to $15,000.00.

DATED this 16 day of May, 1978.

/s/ George B. Davis
George B. Davis, Judge
Hancock Circuit Court"

## ISSUES

1. Whether or not the trial court erred in ruling that the arbitrator was without jurisdiction to interpret the insurance contract.

2. Whether or not the insurance contract was ambiguous and therefore should have been construed to provide double uninsured motorist benefits.

3. Whether or not Ind.Code 27–7–5–1 requires that Liddy receive double uninsured motorist benefits.

4. Whether or not there was a material issue of fact which should have precluded summary judgment.

1. Although Liddy did not address this issue first in her brief, we find it to be a threshold question and we will, consequently, decide it first.

## DISCUSSION AND DECISION

*Issue One* [1]

Liddy's contentions with regard to the arbitration question are focused upon the following paragraph from the uninsured motorist provision:

"Arbitration: If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Coverage, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this Coverage."

She argues, first, that the question of whether she is entitled to $15,000 or $30,000 under the uninsured motorist clause is a question "as to the amount of payment which may be owing under this Coverage," and, that, consequently, it was a question reserved by the terms of the insurance policy for final decision by the arbitrator. She maintains that this agreement embodied in the insurance policy is final and does not violate public policy. Secondly, Liddy contends that this arbitration clause constitutes an enforceable written agreement to submit the question of the proper amount of proceeds owed by Companion to arbitration under Ind.Code 34–4–2–1.[2] Liddy cites no cases to support her arguments on this

2. "34–4–2–1 . . .
Sec. 1. (a) A written agreement to submit to arbitration is valid, and enforceable, an existing controversy or a controversy there-

issue, presumably because this is a case of first impression in Indiana.

Companion, on the other hand, has cited numerous cases from other jurisdictions which, it contends, represent the majority rule that an arbitrator is without jurisdiction to determine the coverage of or to interpret an insurance policy. Companion relies primarily upon *Flood v. Country Mutual Insurance Co.* (1968) 41 Ill.2d 91, 242 N.E.2d 149, and *Frager v. Pennsylvania General Insurance Co.* (1967) 155 Conn. 270, 231 A.2d 531. Companion asserts that *Flood* held that the Illinois version of the Uniform Arbitration Act, which is very similar to IC 34–4–2–1 *et seq.*, does not determine which issues are subject to arbitration and that the parties' arbitration agreement is what controls on that question. Furthermore, Companion maintains that *Flood* and *Frager* held that uninsured motorist provisions very similar to those in the Companion policy authorized the arbitration of only two issues: (1) the liability of the uninsured motorist, and (2) the amount of damages suffered by the insured. Companion urges us to adopt this so-called majority position.

Although there are no Indiana decisions in point on this particular question, we are well aware of the general rules we must follow in determining the meaning of an insurance policy. Our objective here "is to ascertain and give effect to the intent of the parties to the insurance contract." *Meridian Mutual Insurance Co. v. Gulf Insurance Co.* (1977) Ind.App., 366 N.E.2d 190, 192. In ascertaining the intent of the insurance contract, we look at what "the insured, as a reasonable man, believed that the insurer intended by the terms of the contract." *United Farm Bureau Mutual Insurance Co. v. Brantley* (1978) Ind.App., 375 N.E.2d 235, 237. We "will construe an am-

biguous insurance contract in favor of the insured." *Taylor v. American Underwriters, Inc.* (1976) Ind.App., 352 N.E.2d 86, 89. Before we will resort to construction of the contract, however, we must find it to be ambiguous. That is, "it must be susceptible of more than one interpretation, so that reasonably intelligent men, upon reading it, would honestly differ as to its meaning," and "the mere existence of a controversy as to the meaning of an insurance policy does not establish that such an ambiguity exists." *Taylor, supra,* 352 N.E.2d at 89. In order to determine whether or not a policy is ambiguous, we must consider all of the provisions in that policy, or at least the entire endorsement in question. *See Taylor, supra.*

We note initially that one possible source of the controversy here is the use of the word "Coverage" in the arbitration clause of the uninsured motorist provision. Liddy's arguments to the effect that she is entitled to $30,000 rather than $15,000 go basically to the amount of the coverage under the uninsured motorist provision, so her conclusion that this is an arbitrable dispute might be based in part upon the use of the term "Coverage" in the arbitration clause. However, upon closer examination of the policy in general and the uninsured motorist provision in particular, we find that the term "Coverage," with a capital *C*, is used to designate a particular endorsement or section of the policy. Thus, the provision we are considering is labeled "Coverage D—Uninsured Motorists (Damages for Bodily Injury)." When viewed in this light, the term "Coverage" is not ambiguous, and it does not in itself reveal anything about the scope of the arbitration clause.

after arising is valid and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. If the parties to such an agreement so stipulate in writing, the agreement may be enforced by designated third persons, who shall in such instances have the same rights as a party under this act. This act also applies to arbi-

tration agreement between employers and employees or between their respective representatives (unless otherwise provided in the agreement).

(b) This act specifically exempts from its coverage all consumer leases, sales, and loan contracts, as these terms are defined in the Uniform Consumer Credit Code. . . ."

As Companion has suggested, numerous appellate tribunals in other states have been called upon to determine the meaning of arbitration clauses very similar to that found in the Companion policy. While most of the reported opinions have not dealt with the question of whether or not the amount which the insurer has contracted to pay is arbitrable, they have dealt with questions of whether or not other aspects of the coverage of policies are arbitrable. As we stated before, Liddy contends that the amount of insurance benefits which Companion owes her is a question "as to the amount of payment which may be owing under this Coverage," within the meaning of the arbitration clause. We have already held that the term "Coverage" is not indicative of the scope of the arbitration clause. In looking at the decisions from other states, we find it hard to generalize about the significance attributed to the phrase, "as to the amount of payment which may be owing," regardless of which word or words are used instead of "under this Coverage." Some cases involving arbitration clauses containing similar phrases have held that coverage questions are arbitrable. *E. g., American Fidelity Fire Insurance Co. v. Barry* (1978) 80 Mich.App. 670, 264 N.W.2d 92 (per curiam) ("under this endorsement"); *Hennen v. St. Paul Mercury Insurance Co.* (1977) Minn., 250 N.W.2d 840 ("under this Part"); *National Grange Mutual Insurance Co. v. Kuhn* (1968) 428 Pa. 179, 236 A.2d 758 ("thereunder"). Other cases have held that coverage questions are not arbitrable under such an arbitration clause. *E. g., Allstate Insurance Co. v. Cook* (1974) 21 Ariz.App. 313, 519 P.2d 66 ("under this endorsement"); *Frager, supra* ("under this Part"); *Flood, supra* ("under this Section"); *Vasilakis v. Safeway Insurance Co.* (1977) 46 Ill.App.3d 369, 5 Ill.Dec. 1, 361 N.E.2d 1 ("hereunder"); *Citizens Insurance Co. of New Jersey v. Burkes* (1978) 56 Ohio App.2d 88, 381 N.E.2d 963 ("thereunder"). Consequently, we will have to take a broader view of the uninsured motorist provision in

order to determine the meaning of the arbitration clause.

Let us look at both the first paragraph and the arbitration clause of Coverage D together to see whether or not the arbitration clause becomes more meaningful when considered in the proper context:

"PROTECTION AGAINST UNINSURED MOTORISTS

Coverage D—Uninsured Motorists (Damages for Bodily Injury): *To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile* because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, *determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made* by agreement between the insured or such representative and the company or, if they fail to agree, *by arbitration.*

\* \* \* \* \* \*

Arbitration: If any person making claim hereunder and the company *do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile* because of bodily injury to the insured, *or do not agree as to the amount of payment* which may be owing under this Coverage, then, upon written demand of either, *the matter or matters upon which such person and the company do not agree shall be settled by arbitration* in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the com-

pany each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this Coverage. * * * " (Our emphasis)

The reference to arbitration in the first paragraph clearly relates to the amount of damages which the insured could recover from the uninsured motorist. The statement that "determination as to whether the insured . . . is legally entitled to recover such damages, and if so the amount thereof, shall be made . . . by arbitration" obviously refers to the first few lines, which speak of "sums which the insured . . . shall be legally entitled to recover . . . from the owner or operator of an uninsured automobile. . . ." Assuming that this initial paragraph describes the scope of the entire uninsured motorist provision, the reference in the subsequent arbitration paragraph to questions as to whether or not the claimant "is legally entitled to recover damages from the owner or operator of an uninsured automobile" and "as to the amount of payment which may be owing under this Coverage" appear to relate only to the liability of the uninsured motorist and the amount of damages which the claimant is entitled to recover *from the uninsured motorist.*

Why, then, would some state appellate courts hold that such an arbitration clause authorizes the arbitration of questions other than the liability of the uninsured motorist and the amount of damages which the claimant is entitled to recover from him? In *National Grange Mutual, supra,* the Pennsylvania Supreme Court held that the question of whether or not the other motorist was uninsured was arbitrable under the policy. That decision was strongly influenced by statements in *Employers' Fire Insurance Co. v. Garney,* (1965) 348 Mass. 627, 205 N.E.2d 8, and the dissenting opinion in *Rosenbaum v. American Surety Co. of New York,* (1962) 11 N.Y.2d 310, 229 N.Y.S.2d 375, 183 N.E.2d 667, which reflected a public policy preference for avoiding "piece-

meal" litigation. The Pennsylvania Supreme Court preferred to believe that the parties intended that arbitration, free of judicial proceedings, was the only method of dispute resolution contemplated by the parties in the uninsured motorist provision.

The Michigan Court of Appeals has developed a three step test to determine whether or not an issue is arbitrable: (1) "is there an arbitration agreement in a contract between the parties?"; (2) "is the insured's claim 'on its face' . . . or 'arguably' . . . related to the contract?"; (3) "is the dispute 'expressly exempt' by the terms of the contract?" *American Fidelity, supra,* 80 Mich.App. at 674–76, 264 N.W.2d at 95–96. We note that the third step of this test is based upon a sentence found in Mich. Comp.Laws Ann. § 600.5001 (2): "Such an agreement shall stand as a submission to arbitration of any controversy arising under said contract not expressly exempt from arbitration by the terms of the contract."

In *Hennen, supra,* the Minnesota Supreme Court held that the issue of whether or not the uninsured motorist provisions in three St. Paul Mercury Insurance Company policies could be "stacked," so that the insured could recover under each policy, was arbitrable. The test applied by that court is whether or not it is "reasonably debatable" that an issue is included under the terms of the arbitration clause in light of what the court believes is a strong public policy favoring arbitration, manifested in the Uniform Arbitration Act. The *Hennen* opinion indicates that the Minnesota Supreme Court found an arbitration clause quite similar to that in the Companion policy to contain "confusing or ambiguous language. . . . " 250 N.W.2d at 844.

As we have indicated, other courts take a different view of such arbitration clauses. In *Citizens Insurance, supra,* the Ohio Court of Appeals found the language of that kind of an arbitration clause to be "plain and unambiguous." 381 N.E.2d at 968. Fur-

thermore, the Arizona Court of Appeals in *Allstate, supra*, found no inconsistency between a public policy favoring arbitration and a holding that an issue outside the scope of the agreement was not arbitrable.

Moreover, the Illinois Supreme Court decided in *Flood, supra*, that the agreement between the parties, rather than the Illinois Uniform Arbitration Act, determines which issues are arbitrable. In *Flood*, the issue was whether or not the decedent's status as an insured party and the uninsured status of the other vehicle were arbitrable. In holding that neither of those questions was arbitrable, the Illinois Supreme Court explained its interpretation of the insurance policy at pages 93 and 94 of 41 Ill.2d, at page 151 of 242 N.E.2d:

"The question arises, therefore, whether the agreement to arbitrate in the instant case includes the issues relating to coverage, as plaintiff maintains, or whether the agreement is limited to the issues of the liability of the uninsured motorist to the insured and the amount thereof. While we have not previously considered this question, we think it apparent from the language of the instant policy that the latter interpretation must prevail. The policy endorsement in question did not cover all disputes between insured and insurer. It promised to pay all sums which the insured was 'legally entitled to recover as damages from the owner or operator of an Uninsured Vehicle' and provided that the determination as to whether he was 'legally entitled to recover *such* damages, and if so the amount thereof' was to be settled, upon demand, by arbitration. Similarly, the 'Arbitration' paragraph of the policy was particular, not general, and referred only to disputes concerning liability between the person claiming under the policy and the 'owner or operator of an Uninsured Vehicle'. There is no language in either of these paragraphs, or the policy as a whole, which can be read as an agreement to submit to arbitration the issues of coverage. Despite the salutory purpose of our Arbitration Act, parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. We hold, consistent with the vast majority of jurisdictions which have considered this question, that the arbitration agreement contained in the instant policy is limited to the issues of the liability of the uninsured motorist to the insured and the amount thereof. . . ." (Citations omitted) (Original emphasis)

■■■ After giving careful consideration to the language of the uninsured motorist provision in the Companion policy as well as to various views exemplified by the cases cited above, we have concluded that the arbitration clause in issue here provides for arbitration of only two questions: (1) whether or not the insured or his personal representative is legally entitled to recover damages *from the owner or operator of an uninsured automobile*, and (2) if so, the amount of damages which the insured or his personal representative is legally entitled to recover *from the owner or operator of the uninsured automobile*. The policy could have expressly provided that the question of the amount of payment *from the insurance company* to which the insured is legally entitled was subject to arbitration. However, absent a statement to that effect or a general submission of all issues to arbitration, we will not infer that such a question is arbitrable. We agree with the Arizona Court of Appeals in *Allstate, supra*, that this kind of arbitration clause is unambiguous, so we do not find it necessary to construe the clause in favor of Liddy. We find nothing in the Indiana Uniform Arbitration Act which requires us to favor arbitration even where the language of an insurance policy does not expressly provide for arbitration of a particular question.

Our Arbitration Act does not contain any provision similar to M.C.L.A. § 600.5001(2), which makes any question arbitrable if the arbitration clause does not expressly provide that it is not arbitrable. We agree that arbitration is to be encouraged, but not at the expense of the plain meaning of an arbitration agreement in the context of an entire uninsured motorist provision.

Thus, we hold that the court below correctly determined "that the arbitrator does not have jurisdiction to interpret the insurance contract."

*Issue Two*

Liddy raises a number of arguments to the effect that the insurance contract issued to her by Companion was ambiguous and that, consequently, it should have been construed in her favor, thus providing uninsured motorist benefits of $30,000 instead of $15,000.

She directs our attention initially to the "Limits of Liability" clause in the uninsured motorist provision, which provides in pertinent part:

"Limits of Liability.

(a) The limit of liability for uninsured motorists coverage stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

\* \* \* "

Liddy asserts that she paid for double uninsured motorist coverage. In light of that, she contends that the "Limits of Liability" clause is ambiguous because it could reasonably be interpreted in two different ways: (1) The limit of Companion's liability to Liddy is that stated in the declaration [3]

---

**3.** Liddy is referring to the declaration page which accompanied the printed portion of the insurance policy. The part of that page which lists the amounts of coverage and the premium allocations reads substantially as follows:

" COMPANION
INSURANCE COMPANY

Item 5-The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, subject to all the terms of the policy having reference thereto.

| | COVERAGES AND LIMITS OF LIABILITY | | | | | | |
|---|---|---|---|---|---|---|---|
| C A R | A. BODILY INJURY LIABILITY | | B. PROPERTY DAMAGE LIABILITY | C. MEDICAL PAYMENTS | D. UNINSURED MOTORIST | |
| | each person | each occurrence | | | each person | each accident |
| 1 | $15,000 | $30,000 | $10,000 | $1,000 | $15,000 | $30,000 |
| 2 | $15,000 | $30,000 | $10,000 | $1,000 | $15,000 | $30,000 |
| 3 | $ ,000 | $ ,000 | $ ,000 | $ | $ ,000 | $ ,000 |

$48.00
$96.00

under the uninsured motorist coverage for each person, and because the coverage is not limited to a single vehicle, it is $30,000; or (2) the limit of Companion's liability to Liddy is that stated in the declaration under bodily injury coverage and is $15,000.

However, we have found nothing in Liddy's brief or in the record which tends to prove that she in fact paid for double uninsured motorist coverage. The declaration indicates that either of her two cars had $15,000 of uninsured motorist coverage per person, but it does not show what the premium components were for uninsured motorist coverage for each car.

We do not find Liddy's other interpretation of the "Limits of Liability" clause to be reasonable, either. There is no reasonable cause to look under the "BODILY INJURY LIABILITY" section of the declaration page to determine the uninsured motorist coverage for each person when there is a section clearly labeled "UNINSURED MOTORIST."

Focusing on the declaration page, Liddy argues that the "COVERAGES AND LIMITS OF LIABILITY" schedule is itself patently ambiguous. She contends that the uninsured motorist premiums have been allocated to each car even though the uninsured motorist coverage is personal to her and is not contingent upon her occupying either of the insured cars at the time of injury. She further states that the schedule of premiums on the declaration page shows that she paid for double coverage. Consequently, Liddy concludes it is impossible for her to determine from reading the declaration page whether she is entitled to $15,000 or $30,000 of coverage.

 Liddy has correctly reasoned that the uninsured motorist coverage here is personal to her and that she need not be occupying an insured vehicle at the time of injury in order to be eligible for uninsured motorist benefits.[4] *United Farm Bureau*

| E. COMPREHENSIVE AND PARKED CAR ACTUAL CASH VALUE LESS | F. COLLISION ACTUAL CASH VALUE LESS DEDUCTIBLE OF | TOWING PER DISABLEMENT | ENDORSEMENT ATTACHED CA1352 |
|---|---|---|---|
| $ NIL deductible<br>$ NIL deductible<br>$ deductible | $ 100.<br>$ 100.<br>$ | $<br>$<br>$ | |
| PREMIUMS FOR COVERAGE PROVIDED | | | PREMIUM TOTALS |
| $ 11.00<br>$ 29.00<br>$ | $ 24.00<br>$ 53.00<br>$ | $<br>$<br>$ | $ 83.00<br>$ 178.00<br>$ |
| | | Endorsement Premium | $ |
| | | Total Term Premium | $ 261.00 |
| | | Premium For This Declaration | $ 261.00 " |

────────────

4. We note, however, that under the "Exclusions" clause of the uninsured motorist provision, the coverage is expressly made inapplicable "(a) to bodily injury to an insured while

*Mutual Insurance Co. v. Runnels,* (1978) Ind.App., 382 N.E.2d 1015; *Jeffries v. Stewart,* (1974) 159 Ind.App. 701, 309 N.E.2d 448. The uninsured motorist provision in the Companion policy distinguishes between the named insured, Liddy in this case, and other insured parties as follows:

"Definitions: The definitions under Part I, Coverages A and B, except the definition of 'insured,' apply to Part I, Coverage D, and under Part I, Coverage D: 'insured' means:

(a) the named insured and any relative;

(b) any other person while occupying an insured automobile; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under (a) or (b) above.

The insurance afforded under Part I, Coverage D, applies separately to each insured, but the *inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.*"

Thus, persons other than the named insured and relatives must be occupying the insured automobile in order to be protected by the uninsured motorist coverage.

Liddy argues, consequently, that the $30,000 of uninsured motorist coverage per person which she claims to have purchased was improperly divided between the two cars to the extent that it ties her, a "named insured" rather than merely "any other person," to a particular automobile. With this in mind, Liddy concludes that the "COVERAGES AND LIMITS OF LIABILITY" schedule is ambiguous and should therefore be construed in her favor.

We decline this invitation to find ambiguity. First of all, as we stated before, Liddy has given us no basis for believing that she paid for $30,000 of coverage per person other than her bare allegation to that effect. Secondly, Companion admits in its brief that the premium for uninsured motorist coverage was allocated between the two automobiles, but it argues that the portion allocated to the automobile not involved in the collision was necessary to provide coverage for passengers [5] who might be injured while riding in that automobile. In *Miller v. Hartford Accident & Indemnity Co.,* (7th Cir. 1974) 506 F.2d 11, a diversity case appealed from the United States District Court for the Northern District of Indiana, a similar uninsured motorist provision was at issue. Three cars were covered by the policy, and a specific annual premium [6] was charged for each car. The administratrix of the estate of the named insured argued that it was against public policy and Indiana insurance law for the insurance company to charge three separate premiums and not pay three times the amount of recovery stated in the declaration. Nevertheless, the court held that the declaration was unambiguous and that the recovery was limited to the $20,000 stated as the limit per accident in the declaration rather than the $60,000 claimed by the administratrix. In *Hurles v. Republic Franklin Ins. Co.,* (1973) 39 Ohio App.2d 118, 316 N.E.2d 494, separate premiums were charged for uninsured motorist coverage for each of the

occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile. . . ." That particular fact situation *is not before us, so we are not called upon directly to decide the validity of this particular clause.* However, in light of *State Farm Mutual Automobile Insurance Co. v. Robertson,* (1973) 156 Ind.App. 149, 295 N.E.2d 626, the validity of this clause is dubious at best. In any event, it is clear that the uninsured motor-

ist coverage here is personal to Liddy in this particular situation.

5. This term was apparently used by Companion to refer to persons other than the named insured or relatives.

6. The premium for uninsured motorist coverage for each car was said to be $6.00 at one point in the opinion and $9.00 at another.

two automobiles covered under one policy. The trial court had granted summary judgment in favor of the plaintiffs in their suit for a declaration that they were entitled to stack the coverages. In reversing the trial court, the Ohio Court of Appeals said at page 124 of 39 Ohio App.2d, at page 498 of 316 N.E.2d:

> "The fact that a premium is paid with respect to each automobile affords coverage for the insured and his passengers in either vehicle. In this case, for example, without the additional premium applicable to the Dodge, the passengers in the Dodge would not be covered. Hence, there is a separate consideration for each premium."

We agree with the Ohio decision and with the Seventh Circuit's interpretation of Indiana law. The declaration with regard to uninsured motorist coverage and limits is unambiguous. Furthermore, the portion of the premium allocated to the uninsured motorist coverage for each of Liddy's automobiles [7] is justified by the coverage of persons other than the named insured or relatives in each car.

Liddy argues, further, that because she paid for two coverages of uninsured motorist insurance, Companion's contention that the policy was only intended to provide and did only provide single coverage creates another ambiguity. She cites *Harhen v. State Farm Mutual Automobile Insurance Co.*, (1978) 61 Ill.App.3d 388, 18 Ill.Dec. 542, 377 N.E.2d 1178, for the proposition that it is reasonable for the insured to expect multiple coverage after paying multiple premiums.

■ As we stated earlier, an ambiguity is not established by merely showing that a controversy exists. *Taylor, supra.* Moreover, assuming, *arguendo*, that Liddy did pay for two coverages, *Harhen, supra*,

would not help her here. *Harhen* is factually distinguishable in that it involved four policies of insurance, each on a separate vehicle, and the case turned largely on the invalidity of an "other insurance" clause which is not at issue in the case at bar. We find no ambiguity in a mere controversy as to what was paid for and what was intended for the policy.

Liddy also maintains that ambiguity is created by Condition Four of the Companion policy, which she says renders the limitation for bodily injury liability inapplicable to the uninsured motorist coverage. Condition Four reads as follows:

"CONDITIONS

Conditions 1, 2, 3, 6, 14, 15, 16 and 18 apply to all Parts. Conditions 4 and 5, 7 through 13, and 17 apply only to the Parts noted thereunder.

\* \* \* \* \* \*

4. Two or More Automobiles—Part I, Coverages A, B and C and Part II: When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but an automobile and a trailer attached thereto shall be held to be one automobile as respects limits of liability under Part I, Coverages A and B of this policy, and separate automobiles under Part II of this policy, including any deductible provisions applicable thereto.

\* \* \* "

We cannot see how Condition Four relates to the applicability of the limits of bodily injury liability to the uninsured motorist coverage. Condition Four says, for our purposes, that as to certain of the provisions of the policy, the terms apply separately to each car. However, the uninsured

---

7. The declaration does not specify what that amount is for each automobile. All that can be determined from the declaration is that the premium for bodily injury liability, property damage liability, medical payments, and uninsured motorist coverage is $48.00 for one automobile and $96.00 for the other.

motorist provision, Part I, Coverage D, is expressly exempted from this "separability clause." We find no ambiguity here.

Next Liddy contends that the separability clause creates ambiguity in that, contrary to the position taken by Companion and the trial court, it fails to explain why her coverage is limited to $15,000. She maintains that the separability clause is, in fact, immaterial to the question of double coverage.

The importance of a separability clause to the coverage of an uninsured motorist provision was exemplified in *Jeffries, supra.* That case involved an insurance policy containing a provision labeled "Family Protection Coverage" which was very similar to the uninsured motorist provision in the Companion policy. The son of the policyholder was injured when he attempted to jump onto a dump truck driven by an uninsured motorist. The single insurance policy covered three vehicles, and it purported to limit the insurance company's liability to $10,000 per person. The policy contained a "Two or More Automobiles" or separability clause much like Condition Four in the Companion policy. The son of the policyholder obtained a judgment of $30,000 against the uninsured motorist, but the trial court held that the insurance company's liability was limited to $10,000. The son appealed, arguing, *inter alia*, that the policy was ambiguous and should therefore be construed in his favor. We agreed with him and permitted stacking. Judge Robertson explained the court's holding at pages 707 and 709 of 159 Ind.App., at pages 452, 453 of 309 N.E.2d:

> "Ambiguity arises because of conflict between the 'two or more automobiles' clause and the 'limits of liability' clause. The 'two or more automobiles' clause, or separability clause as it is also known, effectuates a contract of insurance separately as to each car insured, and binds each policy with all the provisions and conditions of the single policy. Each of the three policies then contains a promise

to pay the insured damages from bodily injury arising out of the ownership, maintenance or use of an uninsured auto. Additionally, each policy contains limits of $10,000 per person, $20,000 per accident. Therefore, with three policies in effect, Jeffries' person was protected to the extent of $30,000.

\* \* \* \* \* \*

> The limits of liability clause in the uninsured motorist part of the policy set forth above provides that the amount stated in the declaration as applicable to each person is the limit of the insurer's liability to one person as the result of any one accident. Standing alone this provision would appear to be dispositive of the issue before us. However, the insurance contract must be construed as a whole and other provisions, possibly conflicting, cannot be ignored. *Bowen v. Farmers Mutual Insurance Co.* (1936), 101 Ind.App. 362, 199 N.E. 426. We cannot determine whether the limit of liability clause is a part of each of the three policies effectuated by the separability clause, or whether it is meant to apply to the single contract of insurance issued to Jeffries. The insurance contract herein being susceptible of more than one interpretation, we adopt that construction most favorable to Jeffries. He is entitled to recover $30,000 under coverage J, the uninsured motorist section."

However, as we stated before, the separability clause in the Companion policy does not apply to the uninsured motorist provision. In *Jeffries, supra*, the ambiguity was caused by the conflict between the separability clause and the limits of liability clause in the uninsured motorist part. It was because of this ambiguity that we construed each of the three policies created by the separability clause to contain a $10,000 limit of liability. Where, as here, the separability clause is expressly inapplicable to the uninsured motorist clause, there would seem to be only one policy of uninsured

**1034**

motorist coverage and one limit of liability of $15,000.

Although neither this court nor our Supreme Court has had to decide this question before, Companion advises us that the United States Court of Appeals for the Seventh Circuit has decided two similar cases based upon what it determined the Indiana courts would most likely hold. In *Miller, supra,* there was no separability clause, and the Seventh Circuit held that there was no ambiguity and that *Jeffries, supra,* was, consequently, distinguishable. Stacking was, therefore, not permitted. Moreover, in *Trinity Universal Insurance Co. v. Capps,* (7th Cir. 1974) 506 F.2d 16, there was both a limits of liability clause in the uninsured motorist provision and a separability clause in the policy in question; they were substantially the same as those in the Companion policy. As in *Miller*, Senior Judge Hastings distinguished *Jeffries* at page 18 of 506 F.2d:

> "The insurance policy here differs from that in *Jeffries* in that the separability clause in the Trinity policy, by its explicit terms, is inapplicable to the uninsured motorist coverage. Under the authority of *Jeffries* and the decision of our court today in *Miller, supra,* we affirm the judgment of the district court that the limit of liability under the uninsured motorist coverage is $30,000. . . ."

■ We agree with the reasoning of the Seventh Circuit in *Miller* and *Trinity Universal, supra.* Consequently, we hold that there is no ambiguity in the language or operation of the separability clause of the Companion policy. We also hold that the fact that the separability clause is expressly inapplicable to the uninsured motorist provision distinguishes this case from the situation in *Jeffries, supra.*

Liddy also asserts that an undue amount of cross-checking of terms used in the policy is necessary in order to determine the amount of coverage. In examining the pol-

icy, however, we have not found that the necessary cross-checking is so burdensome or confusing as to make the policy unintelligible to the ordinary person. A certain amount of cross-reference is necessary in a policy such as this to prevent it from becoming unduly lengthy and repetitious.

Finally, Liddy maintains that if Companion had wanted to, it could have clearly limited the uninsured motorist coverage for each person to $15,000; because Companion failed to do so, she says, the policy must be construed against the insurer. We have already held that none of Liddy's allegations of ambiguity bears any fruit, and we now hold that the limitation of Companion's liability was stated with sufficient clarity.

Because we have found no ambiguity in the policy provisions brought to our attention by Liddy, we conclude that as far as the language of the Companion policy is concerned, the policy is enforceable as written. As Judge Staton said in *American States Insurance Co. v. Aetna Life & Casualty Co.,* (1978) Ind.App., 379 N.E.2d 510, 516:

> " . . . An unambiguous insurance policy must be enforced according to its terms, even those which limit the insurer's liability. A court may not extend the coverage delineated by the policy, nor may it rewrite the clear and unambiguous language of the policy. . . ." (Citations omitted)

*Issue Three*

■ Liddy directs our attention in this issue to our statute which, generally speaking, requires that uninsured motorist coverage be included in automobile liability policies, Ind.Code 27–7–5–1. That statute provides in pertinent part:

> "27–7–5–1 . . .
>
> Sec. 1. No automobile liability or motor vehicle liability policy or insurance insuring against loss resulting from liability imposed by law for bodily injury or death

suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Acts 1947, chapter 159, sec. 14, as amended heretofore and hereafter, under policy provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

Provided, That the named insured shall have the right to reject such coverage (in writing) and Provided further, That unless the named insured thereafter requests such coverage, in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage, in connection with a policy previously issued to him by the same insurer.

\* \* \* "

Liddy argues that the effect of IC 27–7–5–1 cannot validly be limited by restrictive policy clauses, and she cites the following cases in support of this contention: *Simpson v. State Farm Mutual Automobile Insurance Co.*, (S.D.Ind.1970) 318 F.Supp. 1152; *Leist v. Auto-Owners Insurance Co.*, (1974) 160 Ind.App. 322, 311 N.E.2d 828; *Robertson, supra; Cannon v. American Underwriters, Inc.*, (1971) 150 Ind.App. 21, 275 N.E.2d 567; *Patton v. Safeco Insurance Co. of America*, (1971) 148 Ind.App. 548, 267 N.E.2d 859. However, those cases turned on exclusionary provisions which are not at issue in the case at bar.

Moreover, "[t]he purpose of the uninsured motorist statute is to require that a minimum amount of insurance be available to an injured insured which would place him in substantially the same position he would have occupied had the offending party complied with the minimum requirements of the financial responsibility act." *Capps v. Klebs*, (1978) Ind.App., 382 N.E.2d 947, 951. A motorist in Indiana may give proof of his financial responsibility by showing that he has bodily injury liability insurance in the amount of $15,000 for injury or death of one person and $30,000 for injury or death of two or more persons, as well as property damage liability insurance in the amount of $10,000. Ind.Code 9–2–1–15 and 9–2–1–16.

Liddy asserts that under the rationale of *Jeffries, supra*, there are, in effect, two policies of insurance here and that she is entitled under IC 27–7–5–1 to recover under both of them. We disagree. We previously distinguished *Jeffries*, and in light of that, we now hold that there was but one insured motorist policy in the Companion contract and but one $15,000 limit of liability per person in that policy. This holding in no way infringes upon the public policy supporting the uninsured motorist statute; protection in the amount of $15,000 which the uninsured motorist should have provided has been afforded by the uninsured motorist policy.

*Issue Four*

█ In the statement of the issues in her brief, Liddy raised the following question:
"4. Whether there was a question of fact which precluded Summary Judgment where it can reasonably be inferred that the Appellants intended the contract of insurance to provide double uninsured motorist coverage from the fact that they paid the premium for such double coverage, and where there was nothing in the policy clearly to the contrary."

However, there was no section of her argument devoted to this issue, nor did she expressly group her argument on this issue with her argument on any of the other issues.

In her appellant's and reply briefs Liddy referred repeatedly to her having purchased double or $30,000/$60,000 uninsured motorist insurance. These were bare allegations, however, with no citations to anything in the record which would tend to support these assertions.

**1036**

In her reply brief she argued that because Companion moved for summary judgment, it had the burden of showing the amount of each premium attributable to the uninsured motorist coverage for each automobile; otherwise, she contended, Companion could not properly argue on appeal that the premium for the uninsured motorist coverage on the second automobile was only for the coverage of passengers. While this argument refers to the summary judgment, it does not meet the issue she originally set forth.

The requirements for the argument section of an appellant's brief are set forth in Ind. Rules of Procedure, Appellate Rule 8.3 (A)(7), which provides in part as follows:

> "(7) An argument. Each error assigned in the motion to correct errors that appellant intends to raise on appeal shall be set forth specifically and followed by the argument applicable thereto. If substantially the same question is raised by two [2] or more errors alleged in the motion to correct errors, they may be grouped and supported by one [1] argument. The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review.
>
> \* \* \* "

We have said before that we are not required to resolve any questions which are not saved in the argument section of an appellant's brief. *Deckard v. Mathers,* (1972) 152 Ind.App. 440, 284 N.E.2d 92. We hold that Liddy has waived this issue by failing to argue it adequately.

We affirm the trial court's amended decree and judgment.

LYBROOK and ROBERTSON, JJ., concur.