[No. 50463-6.   En Banc.   September 27, 1984.]

ANNA M. SOWA, ET AL, *Appellants,* v. NATIONAL INDEMNITY COMPANY, *Respondent.*

ANNA M. SOWA, ET AL, *Appellants,* v. ALLSTATE INSURANCE COMPANY, *Respondent.*

*Charles O. Shoemaker, Jr.*, and *Peters, Schmalz, Leadon & Fowler, P.S.*, by *Jay R. Inslee*, for appellants.

*Michael W. Leavitt* (of *Gavin, Robinson, Kendrick, Redman & Mays, Inc., P.S.*), for respondent National Indemnity Co.

*G. Thomas Dohn* and *Blaine G. Gibson* (of *McArdle, Dohn, Talbott & Simpson, Inc., P.S.*), for respondent Allstate Insurance Co.

ROSELLINI, J.—These consolidated cases were certified to this court following the trial court's denial of underinsured motorist coverage to plaintiffs. We affirm.

I

Appellants (Sowas) seek benefits from two different insurance companies for damages sustained in a motorcycle accident. Appellants' son, Kevin, purchased the motorcycle involved from Matt Shoemaker several days before the accident. In his deposition, Kevin stated that the two boys negotiated the sale and agreed on a price of $300 for the

bike. Kevin delivered the check and took possession of the bike, the registration slip and the title.

Because the legal owner of the bike, Charles Shoemaker (Matt's father), was not available, the title was not signed over to Kevin. Kevin apparently intended to return for the necessary signature sometime during the following week. No insurance was purchased for the bike between the day of its acquisition and the accident.

The present controversies arise from the Sowas' claims for underinsured motorist benefits from their own automobile policy and the motorcycle policy owned by Charles Shoemaker. The facts pertinent to each case are as follows:

## Sowa v. National Indemnity Company

In the first case, the Sowas seek coverage from National Indemnity Company under a policy issued to the bike's original owner, Charles Shoemaker. That policy provided coverage for various vehicles, including the motorcycle. The policy included underinsured motorist protection to "covered person[s]". The policy defines covered persons as (1) the insured (Shoemaker) or any family member, (2) any other person occupying "your" covered auto, and (3) any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described above. Exhibit A, at 15.

Appellants filed a declaratory judgment action, alleging that they are entitled to underinsured motorist benefits as individuals occupying a covered vehicle (definition (2)). National Indemnity answered, denying coverage. National Indemnity argues that the pronoun "your" in definition (2) requires that it insure only *owned* vehicles. According to National Indemnity, Charles Shoemaker did not own the motorcycle on the day of the accident because of the prior sales transaction. To prove this fact, National Indemnity notes the Sowas admit that, on the day of the accident, both parties intended the Sowas to have the possession, use, control and benefit of the motorcycle. The Sowas also admit that, prior to the accident, Shoemaker had relin-

quished control of the vehicle, that Shoemaker would have had to obtain permission to use the motorcycle on the date of the accident, and that the only remaining task for completion of the sale was the transfer of title.

The trial judge concluded these uncontroverted facts disposed of the legal issue of coverage and granted summary judgment in favor of National Indemnity.

### Sowa v. Allstate Insurance Company

The second dispute arises from the Sowas' attempt to obtain underinsured motorist benefits from an insurance policy covering their personal automobiles. The following sequence of events appears from the record.

Although the Sowas originally insured their automobiles through Nationwide Insurance, they changed insurance companies shortly after the effective date of Washington's underinsured motorist statute, RCW 48.22.030. Under the underinsured motorist statute, insurance companies are required to offer underinsured motorist coverage to all Washington policyholders.

The policy in question was purchased through respondent Allstate Insurance Company. The type of coverage purchased, however, is disputed. Allstate contends it offered underinsured motorist coverage to the Sowas at that time in accordance with the statute, but Mrs. Sowa rejected it. The record shows that she signed a form which acknowledged that she did not desire such coverage. Exhibit 2. This form also states that Allstate's underinsured motorist coverage, if purchased, does not provide coverage for insureds while they are "occupying or operating motorcycles or similar vehicles not insured under [their] policy."

Two months after the policy was issued, the Sowas notified Allstate of their desire to modify their policy. The extent of this request is also disputed. Appellants' affidavits assert that they requested underinsured/uninsured motorist coverage at this time. Allstate's records indicate only that the Sowas requested *un*insured motorist coverage. Exhibit 3.

Regardless of what was requested, the Sowas' insurance policy shows an initial addition of uninsured motorist coverage. Later policy forms show underinsured motorist coverage. Moreover, it is not clear from the record what endorsements were sent in conjunction with this policy. While the Sowas allege they received nothing but the bills, Allstate asserts that the endorsements were actually sent.

The trial judge assumed either that no endorsement or an uninsured motorist endorsement was sent. He then resolved the question solely by interpreting the underinsured motorist statute, RCW 48.22.030. He reasoned that while the statute would provide automatic coverage to appellants if the accident had occurred while they were riding in their automobile, the statute does not require automatic coverage when insureds are using owned but not insured motorcycles. He entered summary judgment in favor of Allstate and appellants appealed both cases to the Court of Appeals, Division Three, which certified the cases to this court.

## II

The first case presents a relatively simple question of contract interpretation. Appellants assert that the contract between Shoemaker and National Indemnity provided underinsured motorist protection to anyone occupying a vehicle named in the policy regardless of ownership of the vehicle. Appellants note the policy in question provides underinsured motorist protection to "covered persons". Covered persons, in turn, is defined as the named insured and any other person "*occupying your covered auto*". "Your covered auto", then, is defined as any vehicle shown in the declarations. Since, on the day of the accident, the motorcycle was listed on the policy, appellants assert they are entitled to coverage.

The trial judge disagreed. He believed that the definition of covered auto was to be read in conjunction with other definitions in the policy. He reasoned that since the policy defined "you" and "your" as the named insured, *i.e.*,

Charles Shoemaker, the policy required that Charles Shoemaker have a possessory or ownership interest in the motorcycle in order to provide underinsured motorist coverage to individuals in the appellants' situation. As Shoemaker had surrendered all indicia of ownership except the legal title, the judge concluded his interest was insufficient to support appellants' interpretation of the policy.

Appellants now argue that this interpretation of the policy is incorrect, that the above language is ambiguous, and that it is unfair to allow an insurance company to charge a premium for a vehicle without providing coverage. These arguments are not persuasive. Since an insurance contract is merely a written contract between an insurer and the insured, courts cannot rule out any language which the parties have put into it. *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.*, 50 Wn.2d 443, 449, 313 P.2d 347 (1957). The trial judge's decision gives effect to all of the policy terms and is the logical reading of the policy. Appellants' position, on the other hand, ignores the policy's definition of "you" and "your".

Moreover, the trial judge's decision corresponds with the general rule that insurance policies are highly personal contracts which terminate upon sale of the insured vehicle. *See* 7 J. Appleman, *Insurance* § 4269 (Cum. Supp. 1972). Also, as this court has frequently stated, the ownership requirement in insurance policies is supported by sound policy considerations. For instance, the ownership requirement allows insurers to regulate the risk they assume in relationship to the premium charged. *Kelly v. Aetna Cas. & Sur. Co.*, 100 Wn.2d 401, 407–08, 670 P.2d 267 (1983). The interpretation of the trial court reflects these policy considerations.

We also reject appellants' assertion that the language quoted is ambiguous. The test for ambiguity is set out in *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 358, 517 P.2d 966 (1974).

In our opinion, the proper inquiry is not whether a learned judge or scholar can, with study, comprehend the

meaning of an insurance contract, but whether the insurance policy contract would be meaningful to the layman who at his peril may be legally bound or held to understand the nature and extent of its coverage. The language of insurance policies is to be interpreted in accordance with the way it would be understood by the average man, rather than in a technical sense. *Zinn v. Equitable Life Ins. Co.*, 6 Wn.2d 379, 107 P.2d 921 (1940).

The average consumer, we believe, would read the term "your covered auto" as requiring an ownership interest in the vehicle. Since Mr. Shoemaker had no such interest, we find the policy does not apply.[1]

### III

In the second case, appellants seek benefits from their own insurer, Allstate. Appellants allege that they are contractually and statutorily entitled to underinsured motorist coverage under the provisions of RCW 48.22.030.

As noted above, RCW 48.22.030 was amended effective September 1, 1980. The amendments brought major changes to the uninsured motorist statute. Briefly, the legislation provided all insurers are required to offer *under*insured motorist coverage as well as *un*insured protection. Insurers, on the other hand, gained the ability to exclude coverage in certain situations. The pertinent statutory language provides:

(2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages

---

[1] Appellants also argue that it is inequitable to allow the insurance company to retain premiums without providing coverage. This argument ignores the fact that the insurance company did exactly what Mr. Shoemaker told it to do. It removed the motorcycle from the policy the date it was informed of the sale. Nothing in the record establishes a request to delete the vehicle prior to the date requested.

from owners or operators of underinsured motor vehicles, hit–and–run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom, except while operating or occupying a motorcycle or motor–driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy.

. . .

(4) The named insured may reject, in writing, underinsured coverage for bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply. If the named insured has rejected underinsured coverage, such coverage shall not be included in any supplemental or renewal policy unless the named insured subsequently requests such coverage in writing. The requirement of a written rejection under this subsection shall apply only to the original issuance of policies issued after July 24, 1983, and not to any renewal or replacement policy.

RCW 48.22.030(2), (4).

In the present case the trial judge limited the question of coverage to an interpretation of this statute. He reasoned that, even if Allstate had failed to comply with the statute's requirement that underinsured motorist coverage be provided unless rejected, only statutory coverages could be read into the policy. The trial judge then examined the statute and noted that it had to be read into the policy in toto. He concluded that this would result in no coverage to individuals riding owned but uninsured motorcycles.

Appellants attack this conclusion, arguing that the statute provided coverage to individuals on motorcycles. Appellants contend that insurers must affirmatively exclude such coverage in order to avoid the effects of the statute.

We agree with both the trial judge's characterization of this case and his interpretation of the statute. Here, appellants cannot provide evidence of a contractual right to coverage. Thus, to obtain underinsured motorist protection, they must rely upon operation of the statute. We will thus assume that Allstate did not offer the statutory coverage

and read the statute into the policy as the trial judge did. Unfortunately, the statute provides no protection to individuals in appellants' position.

First, the plain language of RCW 48.22.030 negates the inference that underinsured motorist coverage is automatically provided by the statute. The statute states that no policy will be issued unless coverage for underinsured motorists is provided for persons insured under the policy. It then goes on to except or omit underinsured motorist protection when an insured is operating or occupying a motorcycle not insured by the policy.

Moreover, we believe this interpretation of the statute more closely coincides with the Legislature's intent in drafting the legislation. The clause relating to motorcycles appears as an exception in the same sentence which grants the protection initially. The proximity of the grant of coverage to an exception suggests that the Legislature viewed the exception as part of its definition of coverage. Also, appellants' interpretation of the provision, *i.e.,* that it is a permissible exclusion requiring affirmative action by the insurer, is contradicted by the Legislature's use of two such permissive exclusions in other sections of the statute. RCW 48.22.030(5) and (6) demonstrate that the Legislature contemplated permissive exclusions and used markedly different language to achieve them. Instead of excepting coverage, the permissive exclusions state:

(5) The limit of liability under the policy coverage may be defined as the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident.

(6) The policy may provide that if an injured person has other similar insurance available to him under other policies, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages.

RCW 48.22.030(5), (6).

The difference between this language (*i.e.,* "policy may

provide" versus "except") illustrates that the Legislature understood the difference between permitting an insurer the right to exclude or limit coverage and not providing coverage at the outset. We thus conclude the statute does not provide coverage.

In addition to their statutory argument, appellants assert that they are contractually entitled to coverage because they paid for underinsured motorist coverage and did not receive an endorsement eliminating coverage for motorcycles. From these facts, appellants argue that the contract provided coverage and conclude that they are entitled to summary judgment in their favor on the contract. Alternatively, they suggest a remand and trial is required on the factual issue of whether they *received* an endorsement. Respondents, on the other hand, assert that the contract did not provide underinsured motorist coverage to one riding a motorcycle. We agree with respondents. Respondents have submitted affidavits averring that an endorsement so stating was sent. Respondents' affidavits dispose of the issue. The insurer need only prove that the endorsements were sent, not that they were received. *See Wisniewski v. State Farm Gen. Ins. Co.*, 25 Wn. App. 766, 609 P.2d 456 (1980). Since appellants have not controverted the fact that the endorsement was sent, no material issue of fact exists on this question. Respondents are entitled to judgment as a matter of law.

The motion for summary judgment is thus affirmed.

WILLIAMS, C.J., UTTER, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM and HENRY, JJ. Pro Tem., concur.

Reconsideration denied November 15, 1984.