[No. 52080-1. En Banc. March 12, 1987.]

JAMES L. VADHEIM, ET AL, *Appellants,* v. CONTINENTAL INSURANCE CO., *Respondent.*

*Manza, Moceri, Gustafson & Messina, P.S.,* by *Patrick T. Manza* and *John S. Glassman,* for appellants.

*John H. Rayback,* for respondent.

GOODLOE, J.—Dr. James L. Vadheim appeals the trial court's order granting Continental Insurance Company's summary judgment motion wherein the trial court determined that Vadheim was not entitled to any recovery under the automobile insurance policy's underinsured motorist provision. Specifically, the trial court found as a matter of law that Vadheim's insurance policy (1) was unambiguous and (2) that Vadheim was not entitled to stack his underinsured motorist coverages by the number of vehicles insured under the policy. We affirm in part and reverse in part.

Appellant was injured in an automobile accident on April 26, 1981, when a vehicle driven by Kevin Lee McLean collided with the Vadheim automobile. Vadheim suffered severe multiple injuries including a fractured skull and permanent brain damage in areas that control memory, smell and taste. As a result of his injuries, Dr. Vadheim is unable to continue his medical and surgical practice. McLean's automobile insurance policy provided bodily injury liability limits of $25,000. Vadheim collected this amount. McLean could not respond to damages sustained by Vadheim beyond his policy limits.

At the time of the collision, Continental insured Vadheim's automobiles under a policy that had been renewed

May 18, 1980, and was effective until May 18, 1981. This policy provided a single limit liability of $300,000 per occurrence and protection against uninsured and underinsured motorists in the sum of $15,000 per person and $30,000 per accident. Three automobiles were insured under this policy and Vadheim paid a separate premium for each vehicle.

On April 21, 1982, Vadheim submitted a claim to Continental under the policy's uninsured/underinsured motorist provision. Vadheim claimed since three premiums were paid, one for each of the three vehicles, and each premium provided $15,000 uninsured/underinsured motorist coverage, that he should be able to "stack" his uninsured/ underinsured coverage for a total recovery of not less than $45,000. Alternatively, Vadheim claimed that because of a clause in the policy that requires the policy to conform to state statutes, the policy should be conformed in accordance with amended RCW 48.22.030 to provide uninsured and underinsured coverage of $300,000 per vehicle, which in turn should be stacked for a total recovery of $900,000. The exact nature and extent of the doctor's injuries were not determined by the trial court.

Continental rejected Vadheim's claims and stated that the policy would not provide *any* underinsured motorist coverage for Vadheim's loss. Continental believed that by the contractual terms of the effective insurance policy the McLean car was neither an uninsured nor underinsured automobile.

Vadheim sued Continental and both parties subsequently moved for summary judgment. The court ordered supplemental briefs on the issue of whether the $15,000 limits of Continental's underinsured motorist coverage should be stacked because of the three premiums paid by Vadheim to Continental for his three cars. The court concluded that Vadheim was not entitled to multiply his automobile coverage by the number of vehicles insured. The trial court entered an order granting Continental's motion for summary judgment and dismissed Vadheim's complaint with

prejudice, finding that the insurance policy was not ambiguous, that McLean was not an uninsured motorist and that Vadheim could not recover under the policy's underinsured motorist provision. Vadheim appealed to the Court of Appeals, and the Court of Appeals transferred the case to this court.

Initially, we must decide what effect, if any, RCW 48.22-.030 has on the involved policy. Amended RCW 48.22.030, effective September 1, 1980, addresses underinsured motorist coverage. The trial court's order implicitly found RCW 48.22.030 had no effect. Amended RCW 48.22.030(2) combines uninsured and underinsured motorist coverage requirements, and states:

> No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury . . . suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued . . . unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles . . .

Vadheim argues that RCW 48.22.030(3) and (4) are applicable. RCW 48.22.030(3) and (4) provide that the underinsured coverage required under subsection (2) shall be in the same amount as the insured's third party liability coverage, unless the insured rejects this coverage in writing. Appellant contends the policy's clause requiring conformity with state statutes requires amendment of the insurance contract to conform with the revised statute. By using the amended RCW 48.22.030 statute and the contract's conformity clause, Vadheim claims his original underinsured coverage of $15,000 should be conformed to the $300,000 single limit liability, which in turn should be multiplied by the three vehicles covered by the premiums to reach the $900,000 figure.

*Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 707 P.2d 125 (1985) answers the question of whether amended RCW 48.22.030 applies to the Vadheim policy. The *Britton*

court stated, at pages 527–28:

> [T]his state's first statute regulating underinsured motorist coverage was the 1980 statute which became effective September 1, 1980, about 2 months before the insured's accident. As to that, statutes requiring that insurance policies be issued with uninsured or underinsured motorist coverage ordinarily embrace only policies thereafter issued and not existing policies. . . . Since the enactment clearly applies to the issuance of both "new" policies and "renewal" of existing policies, *it precludes our giving it retroactive effect.*

(Footnotes omitted. Italics ours.) The *Britton* court, at page 521, also stated that if the policy in effect at the time of the accident was not "issued" or "renewed" after September 1, 1980, the language of the insurance contract, and not statutory policy controls underinsured motorist coverage.

Vadheim's policy was issued May 18, 1980, and was effective until May 18, 1981. Underinsured motorist coverage was not required by statute when the policy was issued, but was available for Vadheim to purchase in any amount he wished. His accident occurred after the effective date of amended RCW 48.22.030, but before a "new" or "renewed" policy was issued. The policy limits *in effect* at the time of the accident *did* conform with preamended RCW 48.22-.030. The record indicates Continental properly amended Vadheim's subsequently renewed policy so that it conformed with the requirements of amended RCW 48.22.030. Amended RCW 48.22.030 and the *Britton* court's interpretation of the statute make it clear that Vadheim's policy operative at the time of his accident was not affected by the new legislation. Consequently, we find that amended RCW 48.22.030 does not apply to this dispute and the language of the contract controls.

Vadheim contends that his policy contains a number of ambiguities which the trial court failed to construe in his favor. It is a general rule of insurance contract construction that an insurance policy must be meaningful to a layman who at his peril may be legally bound or held to understand the nature and extent of its coverage. Policy language is to

be interpreted in accordance with the way it would be understood by the average man. *Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 358, 517 P.2d 966 (1974). A clause in a policy is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable. *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 435, 545 P.2d 1193 (1976). Furthermore, if any clause is ambiguous the court must apply a construction that is most favorable to the insured, even though the insurer may have intended another meaning. *Morgan,* at 435. Exclusionary clauses are to be most strictly construed against the insurer and the policy interpreted in accordance with the way it would be understood by the average person purchasing insurance. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wn.2d 65, 68, 659 P.2d 509 (1983).

Vadheim argues that the heading of section IV in his policy creates an ambiguity. Section IV of Vadheim's policy is entitled "Uninsured (and underinsured) Motorists Insurance". The section IV heading states:

This section deals with the protection afforded when an uninsured motorist is legally liable for bodily injury sustained by a person insured under this section.

Clerk's Papers, at 15. Vadheim contends the average person reading this paragraph would have cause to believe that they were covered, without restrictions, for injuries sustained at the hands of a motorist not possessing sufficient insurance to cover their damages. A heading is not a grant of coverage. It merely informs the policyholder what subject is covered in section IV of the policy. This heading is neither ambiguous as to its purpose nor susceptible to two different meanings.

Appellant also contends that grants of coverage are contained in a section of the policy entitled the "Supplementary Renewal Declarations". Clerk's Papers, at 14. These declarations are a list of form numbers indicating the types of coverage included in Vadheim's policy. Vadheim intimates that a policyholder reading this portion of the policy would be misled because he or she would not suspect that

the policy also contains certain limitations on underinsured and uninsured motorist coverage. The declarations, however, are only a list and do not indicate any specific grant of coverage upon which the policyholder is entitled to rely.

Vadheim is not entitled to read only the heading to section IV or the Supplementary Renewal Declarations and disregard the rest of the contract. The brevity and language of both indicate that a policyholder should read further for information of the actual coverage specifications and applicable limitations.

Vadheim contends that section IV(C)(2) of the policy improperly reduces the alleged grants of coverage contained in the heading to section IV and the Supplementary Renewal Declarations. Section IV(C)(2) reduces the amount Continental must pay to its insured by any sum recovered from an uninsured or underinsured tortfeasor. The language of section IV(C)(2) itself is unambiguous and would not confuse any policyholder who reads it.

Appellant also claims section IV(E) improperly conflicts with the alleged provisions of the heading to section IV and the Supplementary Renewal Declarations and thereby creates an ambiguity. Section IV(E) provides the definitions of underinsured and uninsured highway vehicles for the purpose of interpreting the insurance contract. It states that the definition of an uninsured highway vehicle *includes* an underinsured highway vehicle and either is:

(1) a highway vehicle with respect to the . . . use of which there is, *in at least the amounts* specified in the Declarations as the limits of liability for Section IV, *no bodily injury . . . insurance policy* applicable at the time of the accident with respect to any person . . . legally responsible for the use of such vehicle . . .

(Some italics omitted and added.) Clerk's Papers, at 16.

Vadheim contends that the policy, by defining "uninsured" vehicles as including "underinsured" vehicles, renders the term "underinsured" superfluous and thereby meaningless. At the time the policy was issued, RCW 46.29.490 required that all motorists carry liability insur-

ance of at least $15,000/$30,000 or be able to post security in those amounts. Vadheim argues that his insurance policy is misleading because anytime a tortfeasor carries the minimum liability insurance required by law at that time, Vadheim's coverage of like amount would be rendered inapplicable. Vadheim, however, could have purchased up to $300,000 of section IV coverage. In that event, Continental would have provided Vadheim underinsured coverage in amounts above the $25,000 sum recovered from McLean's insurance policy. Vadheim's decision not to buy additional underinsured coverage, however, does not render the policy misleading.

We find the contract clause unambiguously defines what is meant by the terms "underinsured" and "uninsured" vehicles. Continental interprets this clause to mean that McLean's car was neither an uninsured nor an underinsured vehicle because it had an effective policy of $25,000 which is "in at least the amount" of $15,000 specified in Vadheim's policy. Clerk's Papers, at 23. However, using the policy definition and the rules regarding stacking of uninsured motorist coverage in effect at the time of Vadheim's accident, we do not agree that the McLean car was neither uninsured nor underinsured.

For his policy, Vadheim paid Continental a total sum calculated by adding three separate premiums for coverage on three different cars. Vadheim contends that he is entitled to multiply or stack his underinsured motorist coverage by the number of automobiles covered in his policy. He relies on *Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975) and *Federated Am. Ins. Co. v. Raynes,* 88 Wn.2d 439, 563 P.2d 815 (1977), which in combination held that an insured is entitled to the same number of *uninsured* motorist coverages as the number of policies or premiums paid for such coverages, providing separate but cumulative protection to the insured. *See also American States Ins. Co. v. Milton,* 89 Wn.2d 501, 573 P.2d 367 (1978).

McLean was an underinsured motorist. Underinsured

motorist coverage at the time Vadheim's policy was issued was solely a matter of contract and at the time could be restricted by Continental by including limiting policy language. In its contract, Continental chose to define underinsured motor vehicles as it defined uninsured motor vehicles. Since the language of the contract controls, underinsured and uninsured coverage should be treated similarly when determining whether Vadheim can stack his uninsured/underinsured coverage.

Continental argues that the Legislature reversed the court adopted stacking provisions allowed in *Cammel* and its successors when it amended RCW 48.22.030, and therefore Vadheim should not be permitted to stack his coverages. Amended RCW 48.22.030(5), relied upon by Continental, permits insurance companies to include policy language that prohibits stacking. *See Sowa v. National Indem. Co.,* 102 Wn.2d 571, 579–80, 688 P.2d 865 (1984). As of September 1, 1980, anti–stacking clauses are valid if they are unambiguous and follow the provisions of RCW 48.22-.030(5). The statute states:

> The limit of liability under the policy coverage *may* be defined as the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident.

(Italics ours.)

We held in *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 4, 665 P.2d 891 (1983) that the amended provisions of RCW 48.22.030 "implicitly overrule" the stacking guidelines set forth in *Cammel* and *Raynes.* This court stated that the

> statute *allows* insurers to include provisions limiting coverage to liability for one accident regardless of the number of persons or vehicles involved and provisions preventing an injured person from stacking policies. RCW 48.22.030(5) and (6).

(Italics ours.) *Millers,* at 4.

Notwithstanding the present validity of unambiguous anti–stacking clauses, RCW 48.22.030(5) does not apply in this case because Vadheim's policy in effect at the time of the accident was not "new" or "reissued" after September 1, 1980, the effective date of the statute. Consequently, since Vadheim's policy, effective May 18, 1980, does not come within the ambit of amended RCW 48.22.030, Vadheim may stack his coverage pursuant to the rules set forth in *Cammel* and *Raynes*.

 Continental further argues that section IV(C)(1) of the policy is an anti–stacking provision that prevents Vadheim from multiplying his coverage by the number of vehicles insured. Section IV(C)(1) reads:

C. Limits of Liability
Regardless of the number of *insureds* under this policy, the company's liability under Section IV is limited as follows:
1. The limit of liability for Section IV if stated in the Declarations as applicable to "each person" is the limit of the company's liability for all damages . . . because of *bodily injury* sustained by one person as the result of any one accident . . .

Clerk's Papers, at 15. Since *Cammel* and *Raynes* were still operative at the time Vadheim's policy was issued, any anti–stacking provision contained therein is improper. To the extent that section IV(C)(1) of the policy is an anti–stacking provision it is void *in this case*. That clause for all intents and purposes is similar to ones we invalidated in *Raynes* and *Milton* at a time when stacking of uninsured motorist coverage was regularly permitted.

The only way Vadheim can recover underinsured motorist coverage is by satisfying the requirements of section IV(E) of the policy. Section IV(E), repeated here, states that the definition of an uninsured highway vehicle includes an underinsured one, and both vehicles are:

(1) . . . highway vehicle[s] with respect to the . . . use of which there is, *in at least the amounts* specified in the Declarations as the limits of liability for Section IV, *no bodily injury . . . insurance policy* applicable at the

time of the accident with respect to any person . . . legally responsible for the use of such vehicle . . .

(Some italics omitted and added.) In other words, by definition, before the McLean car can be considered an underinsured automobile under the policy it must have less insurance than Vadheim's coverage. The McLean car insurance policy provided bodily injury liability limits of $25,000. Vadheim had only $15,000 uninsured/underinsured coverage per person on each of his three vehicles. However, Vadheim can stack his uninsured/underinsured coverages of $15,000 coverage on each of his three vehicles for a total of $45,000. The stacked amount satisfies the restrictions of section IV(E), because McLean's $25,000 coverage is *not in at least the amounts* of Vadheim's $45,000 coverage. By contract definition Vadheim may validly claim he was injured by an underinsured motorist.

Under the policy, however, Vadheim would not be entitled to a full recovery of $45,000 from Continental. This amount must be reduced in accordance with section IV(C)(2), which provides:

2. Any amount payable under the terms of Section IV because of *bodily injury* . . . shall be reduced by . . . all sums paid on account of such *bodily injury* by . . . the owner or operator of the *uninsured highway vehicle* [defined as including underinsured highway vehicle] . . .

Clerk's Papers, at 15. Consequently, under the policy Vadheim can potentially receive from Continental a total recovery of $20,000, $45,000 less the $25,000 paid by McLean.

In summation, we affirm the part of the trial court's order finding the insurance policy provisions were unambiguous and reverse the part finding Vadheim could not recover under the policy's underinsured motorist provision. We remand for further proceedings consistent with this opinion.

PEARSON, C.J., and UTTER, DOLLIVER, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

DORE, J. (dissenting)—I believe the majority correctly decides to stack Vadheim's insurance policies because this court's earlier decision in *Cammel v. State Farm Mut. Auto. Ins. Co.*, 86 Wn.2d 264, 543 P.2d 634 (1975) mandates such a result in uninsured motorist cases. While I realize that in this case we are faced with an underinsured motorist provision, I agree with the majority that because the insurance policy defines an underinsured motor vehicle the same as an uninsured motor vehicle, we should treat the policy as an uninsured motor vehicle policy. See majority, at 844. I am puzzled, however, with the majority's decision to allow a $25,000 setoff in this case. Such a setoff is clearly impermissible in uninsured motorist policies, and I do not understand why this court should treat this as an uninsured policy for purposes of stacking, but an underinsured for purposes of setoff. I would not allow the setoff, and would award Vadheim the full recovery of $45,000.

In *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978) this court stated

The general rule is that, while an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tort–feasor responsible for the damage, *it can recover only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss.*

(Italics mine.) *Thiringer*, at 219. This policy, to make sure the insured is made whole before allowing for a setoff, has been echoed repeatedly by this court. *See, e.g., Nationwide Mut. Ins. Co. v. Kelleher*, 22 Wn. App. 712, 591 P.2d 859 (1979). It mandates that setoff clauses in uninsured motorist policies cannot reduce the amount received by an insured from his insurer unless the insured would obtain a double recovery. In fact, the same policy has recently prevented an insurance company in an underinsured case from obtaining a setoff. *Taxter v. Safeco Ins. Co. of Am.*, 44 Wn. App. 121, 721 P.2d 972 (1986).

Therefore, unless Vadheim has damages less than $45,000, Continental Insurance Company cannot assert the

setoff clause in the policy. Otherwise, the purpose of an insurance policy—namely to insure—would be defeated and the insurer would receive reimbursement for funds paid to its insured while that same insured would have uncompensated damages.

BRACHTENBACH, J., concurs with DORE, J.

Reconsideration denied May 5, 1987.