[No. 29635-3-I.  Division One.  September 7, 1993.]

MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Respondent*, v. BARBARA GRIMSTAD-HARDY, ET AL, *Appellants.*

*Charles K. Wiggins, John Hathaway,* and *Edwards, Sieh, Wiggins & Hathaway, P.S.,* for appellants.

*Harold B. Field, Ronald Unger,* and *Murray, Dunham & Murray,* for respondent.

GROSSE, J. — The appellants, Barbara Grimstad-Hardy and her father, Ronald E. Grimstad, appeal from a summary judgment proceeding in favor of the respondent, Mutual of Enumclaw Insurance Company. Grimstad-Hardy was injured when an uninsured motorist struck the vehicle in which she was a passenger. Grimstad-Hardy asserts that under the underinsured motorist (UIM) statute, RCW 48.22.030, she may "stack" coverage for the three vehicles insured under her policy. Grimstad-Hardy alternatively argues that the UIM provisions of the policy contain ambiguous language and should be construed to allow stacking. Moreover, Grimstad-Hardy asserts that the "per accident" liability limit of $200,000 is applicable rather than the "per person" liability of $100,000. We affirm.

Barbara Grimstad-Hardy was a passenger in a vehicle owned and operated by Henry Blair. The car was struck by an uninsured driver. Grimstad-Hardy was seriously injured and asserts that her damages exceed $300,000. Grimstad-Hardy received $50,000 from Blair's insurance company, United Services Automobile Association (USAA), pursuant to Blair's UIM policy. Grimstad-Hardy also has UIM coverage through a policy of insurance issued to her father, Ronald Grimstad, by Mutual of Enumclaw Insurance Company (Mutual of Enumclaw). The Mutual of Enumclaw policy covers four vehicles, three of which have UIM coverage. The coverage page of the policy states the amount of uninsured coverage for those three vehicles as follows:

| UNINSURED MOTORIST | $100,000 | EACH PERSON |
|---|---|---|
| BI = $200,000 | PD = 25,000 | EACH ACCID |

The UIM section of the policy contains a limit on liability as follows:

C. OUR LIMIT OF LIABILITY
1. Regardless of the number of covered cars, insureds, claims made or vehicles involved in the accident or premiums shown on the Coverage Page, the most we will pay for bodily injury or property damage resulting from any one accident is the Underinsured Motorist limit shown for the covered car on the Coverage Page.

No one will be entitled to receive duplicate payments for the same elements of loss as a result of the application of this provision.

If an injured person has other similar insurance available under other policies, the total limits of liability of all coverage shall not exceed the higher of the applicable limits of the respective coverages.

The policy further explains "covered car":

A. The Coverage Page shows **cars** that are covered **cars**. With respect to this insurance **car** means:
1. Any vehicle **you** own which is shown on the Cover Page with a "policy form" of "P" denoting Personal **Car**. Insurance applies only where a specific premium charge indicates there is coverage.

The general provisions of the policy also contain a separability clause:

5. Two or More Cars Insured.
a. If this policy and any other **car** insurance policy issued to **you** by **us** apply to the same **accident**, the maximum limit of **our liability** shall not exceed the highest applicable limit for any one **car**.
b. When two or more **cars** are insured by this policy, the policy terms apply separately to each **car**. . . .

The parties disputed the amount of UIM coverage available to Grimstad-Hardy, and Mutual of Enumclaw filed a declaratory judgment action in King County Superior Court. Grimstad-Hardy asserted she should be able to recover the $200,000 per accident limit for her injuries rather than the $100,000 per person limit. Grimstad-Hardy also argued that she could stack UIM coverage for all three vehicles, thus receiving total coverage of $600,000. Both parties moved for summary judgment. The trial court granted Mutual of Enum-

claw's motion for summary judgment and denied Grimstad-Hardy's motion. The order granting summary judgment provided that the maximum coverage available to Grimstad-Hardy is the $100,000 per person limit on the coverage page, the policies could not be "stacked", and the $50,000 already paid by USAA was to be deducted from Mutual of Enumclaw's liability. Grimstad-Hardy appeals the trial court order for summary judgment.

■ Under CR 56(c), summary judgment is appropriate when no genuine issues of material fact exist and judgment is appropriate as a matter of law. The review of the disposition of a motion for summary judgment assumes facts in a light most favorable to the nonmoving party. *Douchette v. Bethel Sch. Dist. 403*, 117 Wn.2d 805, 818 P.2d 1362 (1991). This case presents two discrete issues of statutory and contract interpretation: (1) whether the UIM coverage for each individual may be "stacked" under the UIM statute and the limit of liability and separability clauses of the Mutual of Enumclaw policy, and (2) whether the $100,000 per person limit or the $200,000 per accident limit on the coverage page of the Mutual of Enumclaw policy applies under the policy's UIM limit of liability clause.

Automobile insurers must offer UIM coverage as provided in RCW 48.22.030. That statute was enacted by the Legislature in order to assure full compensation, within UIM policy limits, for insured parties injured by underinsured or uninsured tortfeasors. *Hamilton v. Farmers Ins. Co.*, 107 Wn.2d 721, 727, 733 P.2d 213 (1987). The Legislature sought to allow the insured to collect the same amount of damages under underinsured motorist coverage as if the responsible party had been insured with liability insurance with limits equal to the insured's UIM policy. *Brown v. Snohomish Cy. Physicians Corp.*, 120 Wn.2d 747, 756, 845 P.2d 334 (1993); *Bates v. State Farm Mut. Auto. Ins. Co.*, 43 Wn. App. 720, 725, 719 P.2d 171, *review denied*, 106 Wn.2d 1014 (1986).

Prior to the 1980 amendment of RCW 48.22.030, the Washington Supreme Court interpreted the statute to allow insured parties to "stack" coverage on each vehicle in a pol-

icy and collect UIM benefits for each vehicle, even if the policy contained an antistacking limiting provision, reasoning that such a result was warranted by the underlying policy of the uninsured motorist statute, former RCW 48.22-.030.[1] *See Federated Am. Ins. Co. v. Raynes*, 88 Wn.2d 439, 447, 563 P.2d 815 (1977) (allowing insured to stack coverage for two vehicles within a single policy); *Cammel v. State Farm Mut. Auto. Ins. Co.*, 86 Wn.2d 264, 270, 543 P.2d 634 (1975) (allowing stacking of coverage for three vehicles with separate policies).

The Legislature responded in 1980 by amending former RCW 48.22.030 to allow insurers to limit both intrapolicy and interpolicy stacking. The newly enacted provision stated:

> The limit of liability under the policy coverage may be defined as the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident.

RCW 48.22.030(5).[2] *See also Edwards v. Farmers Ins. Co.*, 111 Wn.2d 710, 715, 763 P.2d 1226 (1988); *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 531-32, 707 P.2d 125 (1985). This language implicitly overruled both *Raynes* and *Cammel. Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 4, 665 P.2d 891 (1983).

Grimstad-Hardy claims this statutory language permits insurers to limit only stacking of "per accident" UIM liability under the policy. Under this interpretation, insurance companies are strictly precluded from limiting stacking of UIM "per person" liability. Accordingly, Grimstad-Hardy contends Mutual of Enumclaw cannot limit its maximum UIM coverage to the "per person" limit. In other words, she claims RCW 48.22.030(5) allows insurance companies to limit only the stacking of "per accident" liability of policies and not "per person" liability. Consequently, because Mutual of Enumclaw

---

[1] Laws of 1967, ch. 150, § 27, amended by Laws of 1980, ch. 117, § 1; Laws of 1981, ch. 150, § 1; Laws of 1983, ch. 182, § 1.

[2] Laws of 1980, ch. 117, § 1.

contends the limitation of liability clause pertains to both "per person" and "per accident" liability, Grimstad-Hardy maintains the clause is inoperative because it does not comply with the statutory language of RCW 48.22.030(5).

■ Grimstad-Hardy's interpretation of the statute is based upon its asserted ambiguity in initially referring to the "limit of liability" (singular) and then next referring to "maximum limits of liability" (plural). If the statute is susceptible of more than one reasonable meaning, and therefore ambiguous, it is subject to rules of statutory construction. *Shoreline Comm'ty College Dist. 7 v. Employment Sec. Dep't*, 120 Wn.2d 394, 405, 842 P.2d 938 (1992). When a statute is plain and unambiguous in wording, its meaning is to be derived from the wording of the statute. *Tellevik v. 31641 Rutherford St.*, 120 Wn.2d 68, 76, 838 P.2d 111 (1992). The language at issue does not appear to be internally contradictory or ambiguous, however. The initial reference to "limit of liability" refers to the overall extent of liability under the policy. In defining that overall singular liability, the insurance company may use as a reference the "maximum limits of liability" set forth in the policy: If the accident involves one person, then the per person limit is the entire limit of liability. If multiple persons are involved, then the per accident limit applies. A plain reading of the statute leads to such an interpretation. The statute only becomes ambiguous when viewed in conjunction with early legislative materials provided by Grimstad-Hardy. As the Division Two Court of Appeals observed in *Bernstein v. State*, 53 Wn. App. 456, 460, 767 P.2d 958, *review denied*, 112 Wn.2d 1024 (1989):

> Plaintiff resorts to legislative history to urge ambiguity where none exists. Where the language of a statute is clear and unambiguous, there is no room for judicial construction. Resort to legislative history in such circumstances is thus inappropriate. . . . [W]hen a statute's meaning is apparent from the language used, there is no reason to look beyond its wording.

(Citations omitted.)

■ However, even if we accept Grimstad-Hardy's contention of ambiguity, the legislative history does not support her

construction of the statute. The primary goal of statutory construction is to ascertain the intent of the Legislature. *Tellevik*, 120 Wn.2d at 76. The intent of the Legislature may be determined by the examination of legislative history. *See State v. McDougal*, 120 Wn.2d 334, 841 P.2d 1232 (1992); *Bernstein*, 53 Wn. App. at 460. Grimstad-Hardy claims that one of the authors of the bill, Hugh McGough, based the statutory language on a standard Insurance Services Office (ISO) UIM endorsement that addressed only a "per accident" limit of liability.[3] This fact alone does not compel the conclusion that the Legislature intended the language only to apply to "per accident" limits of liability, however. To the contrary, the subsequent legislative history undermines Grimstad-Hardy's argument. The wording of the ISO form was altered by the Legislature, and instead of discussing "maximum limit" of liability, the Legislature pluralized that section to read "maximum *limits*". RCW 48.22.030(5).[4]

Moreover, none of the legislative materials suggest that "per person" maximum limits are to be distinguished from "per accident" maximum limits. Indeed, materials provided by Mutual of Enumclaw indicate that the Legislature passed this legislation with both "per person" and "per accident" maximum limitations in mind: "The minimum level of underinsured coverage is set at the minimum amounts speci-

---

[3]The schedule for the ISO form provided as follows:
"Limit of Liability
"$_____ each accident
"No 'per person' limit of liability was designated. The 'Limit of Liability' section then stated:
"The limit of liability shown in the Schedule or in the Declarations for this coverage is our maximum *limit* of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
"1. Covered persons;
"2. Claims made;
"3. Vehicles or premiums shown in the Schedule or in the Declarations;
"4. Premiums paid; or
"5. Vehicles involved in the accident." (Italics ours.) Brief of Appellants app. E.

[4]"The limit of liability under the policy coverage may be defined as the maximum *limits* of liability . . .". (Italics ours.)

fied in RCW 46.29.490 which under SHB 1983 is 25/50/10."
Memorandum dated February 4, 1980, from Gregg Johnsen
to Gail Ditlevson regarding "Sectional Analysis of Substitute
House Bill 1983". Brief of Respondent, app. C. Although this
specific language was not included in the final statute, RCW
48.22.030 does mandate that coverage must be offered "in
the same amount as the insured's third party liability cover-
age". The statutory minimum for such coverage is 25/50/10
according to RCW 46.29.490. The coverage may also be pur-
chased with one liability limit irrespective of individual or
per accident loss.

The memorandum further explains the operation of the
statute, and the analysis for subsection (5) explains:

> This is an anti-stacking provision which provides that *no double
> recovery will be made*. In any circumstances the total amount
> that may be recovered is the maximum liability limit, regard-
> less of multiple policies.

(Italics ours.) This intent to limit stacking for both per per-
son and per accident liability is further demonstrated in a
committee analysis of ESHB 1983 dated February 13, 1980.
The memorandum explains:

> Anti-stacking provisions state that if an insured has coverage
> available under more than one policy, the total limit of liability
> will not exceed *the highest single limit* provided by any one of
> the coverages, regardless of the number of people involved,
> claims made, or premiums paid.

(Italics ours.) Memorandum of House Insurance Committee;
Brief of Respondent app. B.

Implicit in this language is the assumption that the
limit may vary under different circumstances. We find the
legislative materials demonstrate the legislative intent that
the antistacking provisions were meant to apply to both "per
person" and "per accident" liability.

Grimstad-Hardy cites *Sowa v. National Indem. Co.*, 102
Wn.2d 571, 579, 688 P.2d 865 (1984) for the proposition that
"the statute preserves the insured's right to stack unless the
insurer clearly and unambiguously limits its liability to the
one accident limit." Brief of Appellants, at 14. *Sowa* does not

support this proposition; the court discusses RCW 48.22-.030(5) within the general context of demonstrating the Legislature's intent to allow permissive exclusions for insurance companies to limit coverage if they so choose. It does not state that the permissive exclusion is only permitted if the liability is limited to a "one accident" limit.

Moreover, cases construing the antistacking limit of liability clause under RCW 48.22.030(5) have not made such a distinction between "per accident" and "per person" limits. In *Lien v. Allstate Ins. Co.*, 626 F. Supp. 1132 (W.D. Wash. 1986), *aff'd*, 823 F.2d 1553 (9th Cir. 1987), the court upheld an antistacking provision and applied it to prevent an injured policyholder with three vehicles insured under the same policy from stacking $50,000 per person coverage for each vehicle. The court did not find the limitation invalid because it applied to "per person". In *Safeco Corp. v. Kuhlman*, 47 Wn. App. 662, 664, 737 P.2d 274, *review denied*, 108 Wn.2d 1037 (1987), the court upheld an antistacking limit of liability clause even though it specifically limited stacking for both "per person" and "per accident" maximum coverage. The recovery in that case, however, was under the "per accident" limit because two parties were injured in the same accident.[5]

In sum, neither the legislative history nor the cases construing RCW 48.22.030(5) support Grimstad-Hardy's claim that the antistacking clause is invalid under RCW 48.22-.030.

█ Grimstad-Hardy alternatively argues that the clause is not enforceable because it is ambiguous by its own terms. A clause is ambiguous when it is susceptible to two different but reasonable interpretations. *Vadheim v. Continental Ins. Co.*,

---

[5] *See also Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 845, 734 P.2d 17 (1987), wherein the court's opinion suggests that a "per person" antistacking clause may have been valid under RCW 48.22.030(5); however, the policy predated the 1980 amendment and consequently the policy was governed by the principles of *Raynes* and *Cammel*:

> Since *Cammel* and *Raynes* were still operative at the time Vadheim's policy was issued, any anti-stacking provision contained therein is improper. To the extent that [the limit of liability clause] is an anti-stacking provision it is void *in this case*.

107 Wn.2d 836, 841, 734 P.2d 17 (1987). A policy is not structurally ambiguous merely because the relevant language is not contained within a single clause or page. *Safeco Corp. v. Kuhlman*, 47 Wn. App. at 665. Provisions are not necessarily inconsistent or ambiguous merely because the scope of coverage must be determined by the examination of several provisions. *Doyle v. State Farm Ins. Co.*, 61 Wn. App. 640, 644, 811 P.2d 968, *review denied*, 118 Wn.2d 1005 (1991). If the provisions are ambiguous, rules of construction apply and the court must construe the clause most favorably to the insured. *Vadheim*, 107 Wn.2d at 841. The policy should be interpreted consistently with the understanding of an average purchase of insurance. *Vadheim*, 107 Wn.2d at 840-41. Nor may a court modify or supplement the policy with additional language. *Vandivort Constr. Co. v. Seattle Tennis Club*, 11 Wn. App. 303, 310, 522 P.2d 198, *review denied*, 84 Wn.2d 1011 (1974).

Grimstad-Hardy claims that the limitation of liability clause is ambiguous because (1) it limits liability to the UIM limit for the "covered car" on the coverage page without adequately defining which car would be the "covered car", and (2) the separability clause, when read together with the limits of liability clause, creates an ambiguity that must allow stacking.

The interrelation of these allegedly ambiguous provisions must be examined within the unique context of underinsured vehicle coverage. UIM coverage presents unique challenges in interpretation because its nature is to attach not only to a specific automobile, but also to the person of the insured under the policy. It is necessary to examine the operation of these contractual provisions as a whole to determine whether ambiguity exists.

Grimstad-Hardy argues that because the policy does not specify which "covered car" applies in a situation where the insured is injured in an automobile not shown on the coverage page, it is ambiguous because it is impossible to tell which car is the "covered car". However, Grimstad-Hardy

does not take into account the interplay of the provisions within the contract.

The limit of liability clause provides that the maximum liability for one accident is the UIM limit shown for the *covered car* on the coverage page. Covered car is further defined as any car owned by the insured on the cover page where a premium charge indicates coverage. Grimstad-Hardy argues that this is ambiguous because any of the three insured cars could be the covered car.[6] However, the inquiry does not end at that point. Other provisions of the policy further define the selection of a "covered car". In order to reach that point, however, the interaction of the limit of liability clause and the separability clause must be examined.

The separability clause provides that when multiple cars are insured, the policy terms apply separately to each car. The Washington Supreme Court has held that a separability clause applied to the primary liability section of an automobile insurance policy did not create ambiguity when read together with the policy's limit of liability section, thus stacking was not permitted. *Pacific Indem. Co. v. Thompson*, 56 Wn.2d 715, 716, 355 P.2d 12 (1960). The court noted the purpose of a separability clause is to render the policy applicable to whichever insured car is involved in an accident:

> [T]hat provision merely assures the applicability of the policy to whichever car is involved in an accident, or to all the cars, and does no more.

*Pacific Indem. Co.*, 56 Wn.2d at 716; *Rodenbough v. Grange Ins. Ass'n*, 33 Wn. App. 137, 139-40, 652 P.2d 22 (1982).

---

[6]Grimstad-Hardy asserts that the only situation in which the "covered car" language can refer to a single car is if the injured is not a named insured under the policy, but a passenger in an insured vehicle, relying on *Abshere v. Prudential Ins. Co.*, 38 Wn. App. 1, 3-4, 683 P.2d 625, *review denied*, 102 Wn.2d 1013 (1984). *Abshere* presented precisely such a circumstance, and the passenger was not allowed to stack coverage on the owner's policy for two vehicles; the court citing *Thompson v. Grange Ins. Ass'n*, 34 Wn. App. 151, 660 P.2d 307, *review denied*, 99 Wn.2d 1011 (1983) in support of its holding. However, as discussed below, this is not the only situation in which the "covered car" language refers to a single car.

This result, however, is not necessarily compelled within the context of uninsured or underinsured motorist coverage. Other jurisdictions have construed separability clauses to mean that a separate contract of insurance is effectuated for each vehicle with all the provisions and conditions of the single policy. *See Jeffries v. Stewart,* 159 Ind. App. 701, 708, 309 N.E.2d 448, 452 (1974); *Barnes v. Government Employees Ins. Co.,* 142 Ga. App. 377, 380, 236 S.E.2d 9, 12 (1977). The combination of a limitation of liability clause together with a separability clause has been viewed by some courts as creating an ambiguity that requires an interpretation in favor of the insured allowing stacking.[7] *See Virginia Farm Bur. Mut. Ins. Co. v. Wolfe,* 212 Va. 162, 183 S.E.2d 145 (1971); *Jeffries v. Stewart,* 159 Ind. App. at 709:

---

[7]Mutual of Enumclaw argues that the limit of liability clause in its UIM section is unambiguous, relying on *Miller v. Hartford Accident & Indem. Co.,* 506 F.2d 11 (7th Cir. 1974). That case also addressed multiple vehicles insured under one policy; the limit of liability clause enforced in that case is somewhat similar to the Mutual of Enumclaw provision. The court held that the limit of liability clause was unambiguous, thereby preventing stacking.

However, the opinion also notes that no separability clause existed in the policy, whereas Mutual of Enumclaw's limit of liability provision must be read in conjunction with its separability clause. Therefore, *Miller* is distinguishable on that basis.

In addition, Mutual of Enumclaw relies on *Herzig v. Aetna Cas. & Sur. Co.,* 693 F. Supp. 306 (E.D. Pa. 1988), *aff'd,* 869 F.2d 589 (3d Cir. 1989); *Votedian v. General Accident Fire & Life Assur. Corp.,* 330 Pa. Super. 13, 478 A.2d 1324 (1984); *Taylor v. Aetna Cas. & Sur. Co.,* 867 F.2d 705 (1st Cir. 1989). In each case, the court found that a limit of liability clause virtually identical to the Mutual of Enumclaw clause was clear and unambiguous and prohibited stacking. However, as in *Miller,* no separability clauses existed.

Similarly, Mutual of Enumclaw argues that a similar result is mandated by *Tri-State Ins. Co. v. De Gooyer,* 379 N.W.2d 16 (Iowa 1985); *Constant v. Amica Mut. Ins. Co.,* 497 A.2d 343 (R.I. 1985); *Sousa v. Travelers Indem. Co.,* 27 Mass. App. Ct. 1122, 537 N.E.2d 603, *review denied,* 405 Mass. 1203 (1989). These cases all address limit of liability clauses that generally limit liability of damages resulting from one accident to the amount shown on the declarations page. The courts found this language unambiguous. However, none of these policies were examined in conjunction with a separability clause; and to that extent they also are inapposite. Moreover, each analysis is made within the context of the individual state's underinsured or uninsured motorist statute; and differences in the statutes preclude a blanket analogy.

> We cannot determine whether the limit of liability clause is a part of each of the three policies effectuated by the separability clause, or whether it is meant to apply to the single contract of insurance issued to Jeffries. The insurance contract herein being susceptible of more than one interpretation, we adopt that construction most favorable to Jeffries.

The effect of a separability clause on an antistacking limit of liability provision in a UIM policy has not yet been resolved by the Washington courts. The Washington Supreme Court faced this precise issue in *Federated Am. Ins. Co. v. Raynes*, 88 Wn.2d at 447. The court noted the split in authority of other jurisdictions, and noted:

> We agree with the latter cases [finding uninsured intrapolicy coverage can be stacked if a separability clause exists] that the reasoning of *Thompson* is not applicable to the issue of combining uninsured motorist coverages. However, we need not rule on whether the separability provision requires the combining of uninsured motorist coverages, for we believe the limits-of-liability provision conflicts with the statutory policy of providing uninsured motorist coverage.

*Raynes*, 88 Wn.2d at 447. The court cited *Jeffries* with approval, noting the distinction articulated in *Jeffries* that uninsured motorist insurance is independent of operating a specific insured vehicle; it depends on the injuries of the insured, whether or not incurred during the operation of a vehicle insured under the policy.[8] In contrast, liability insurance policies, such as the policy discussed in *Thompson*, are dependent on the operation of the specific vehicle, and coverage cannot be com-

---

[8]Mutual of Enumclaw argues that under *Rodenbough v. Grange Ins. Ass'n*, *supra*, the separability clause should be construed to prevent stacking. *Rodenbough* addressed a separability clause within the context of personal injury protection insurance, which was limited to the injuries incurred during operation of the insured vehicle. The court found that the interaction of the limit of liability clause and the separability clause did not create an ambiguity, relying on *Pacific Indem. Co.*, 56 Wn.2d at 716.

The underlying rationale in *Rodenbough* is not necessarily applicable to underinsured motorist protection, however. Personal injury protection insurance is not personal to the insured individual, as is underinsured motorist protection. Moreover, the *Rodenbough* court noted the distinction existing between the statutory nature of underinsured motorist coverage and the strictly contractual nature of personal injury protection.

bined under a separability clause. Nevertheless, the *Raynes* court left the issue unresolved.

In general, the decisions of other jurisdictions have taken two different approaches in order to avoid the asserted ambiguity of the separability clause and preserve the operation of a limit of liability clause and prevent intrapolicy stacking. Some courts have upheld the antistacking provision on the basis that the separability clause is expressly excluded from the UIM coverage. *See Leader Nat'l Ins. Co. v. Berry*, 157 Ga. App. 627, 278 S.E.2d 170 (1981); *Indiana Ins. Co. v. Ivers*, 182 Ind. App. 482, 395 N.E.2d 820 (1979); *Liddy v. Companion Ins. Co.*, 181 Ind. App. 16, 32-33, 390 N.E.2d 1022, 1032-33 (1979); *Trinity Universal Ins. Co. v. Capps*, 506 F.2d 16 (7th Cir. 1974). Other courts have taken the approach that the separability clause cannot affect a clear and unambiguous limitation of liability to the amount stated on the declaration page. *See Hanover Ins. Co. v. Cormack*, 78 Ill. App. 3d 368, 373, 396 N.E.2d 1076, 1079 (1979). *See also Barnes v. Government Employees Ins. Co.*, 236 S.E.2d at 12; *Coleman v. State Farm Mut. Auto. Ins. Co.*, 192 Ga. App. 285, 286, 384 S.E.2d 399, 401 (1989).

■ If the separability clause in the policy at issue contained no further refinement, our inquiry would end under the rule articulated in *Jeffries*. However, the separability clause in the instant case further provides that "If this policy and any other car insurance policy issued to you by us apply to the same accident, the maximum limit of our liability shall not exceed the highest applicable limit for any one car." This policy language is substantially identical to the separability clause language noted in *Hanover Ins. Co. v. Cormack*, 78 Ill. App. 3d at 370. That policy stated the insurance company's liability "shall not exceed the highest applicable limit of liability or benefit amount under any one such policy." Thus, even if the separability clause creates three separate policies, the liability of Mutual of Enumclaw would still be limited to the highest applicable limit under any one policy. As the

limits are the same in the instant case, it is irrelevant which vehicle Grimstad-Hardy claims under. Moreover, this language provides the insured with a "covered car" — the vehicle with the highest applicable limit of liability on the coverage page. Thus, even though the separability clause severs the policy to apply separately to each car, the liability is still unambiguously limited to the highest applicable limit for one car. This result is consistent with the intent of antistacking legislation.

Although the interplay of these provisions is complex to the extent that several provisions must be read together, the overall operation of the policy's UIM provisions do not appear to create any real ambiguity. Limit of liability clauses need not track the exact wording of RCW 48.22.030(5) to be valid; it is sufficient if they express the intent of the statute and are unambiguous when read as a whole. *Safeco Corp. v. Kuhlman*, 47 Wn. App. at 665. Admittedly, each provision of the contract viewed independently is susceptible of different meanings. Yet taking into account the interplay of these provisions, we find the policy is unambiguous. Grimstad-Hardy also contends that she is entitled to coverage under the $200,000 "per accident" limit and not the $100,000 "per person" limit. Her argument is based upon the asserted ambiguity in the relationship between the limit of liability clause and the coverage page. The limit of liability clause states it will limit liability for "any one accident" to the amount shown on the coverage page without specifically mentioning that the "per person" limit applies to an accident involving only one insured. She claims that interpreting the clause to limit liability to the "per person" limit is inherently contradictory to the "one accident" clause which applies "regardless of the number of insureds". This argument seems to assume that "number of insureds" equals "number of injured insureds". In order to properly interpret this provision, it is necessary to examine the interplay of the limit of liability clause with the coverage page. The limit of liability clause

refers the insured to the coverage page for the applicable UIM limit on the covered car.

The limits on the coverage page unambiguously state that the limit for each person is $100,000; the limit for each accident is $200,000. An average person could not reasonably construe this language to mean that injury to one person has a $200,000 limit; such a reading would render the $100,000 per person limitation totally superfluous.

Although, as Grimstad-Hardy argues, the meaning of the limit of liability clause would be more precise if it included language specifically stating that liability for a 1-person injury is limited to the "per person" limit, the lack of such language does not render the clause ambiguous in light of limitations set forth on the coverage page. Grimstad-Hardy also claims that under *Haney v. State Farm Ins. Co.*, 52 Wn. App. 395, 760 P.2d 950 (1988), *review denied*, 111 Wn.2d 1033 (1989), if a policy contains a "per person" limitation and a higher "per accident" limitation, the provisions are patently ambiguous unless the per accident limit is made "subject to" the per person limit. This argument mischaracterizes the holding of *Haney*. The liability limits at issue in the *Haney* policy were a $100,000 per person limit, and a $300,000 per accident limit for injuries to two or more persons. Because two individuals were injured in an accident covered under the policy, the policy could be construed as limiting coverage to $100,000 under the "per person" limit, or granting a total of $300,000 under the "per accident" limit, a total of $150,000 for each person. The "subject to" language would have clarified the discrepancy.

In contrast, the provisions at issue in the instant case contain a $100,000 "per person" and a $200,000 "per accident" limit; no discrepancy or ambiguity exists in the amounts of the limitations. Indeed, in *Baehmer v. Viking Ins. Co.*, 65 Wn. App. 301, 827 P.2d 1113 (1992), Division Two found that "subject to" language was not necessary when the policy amounts were internally consistent. Likewise, the limit of liability clause in the case at hand is not ambiguous when read in

conjunction with the coverage page, which plainly sets forth "per person" and "per accident" limits for each vehicle.[9]

Although Grimstad-Hardy assigned error to the trial court's award of $50,000, the net amount of UIM coverage available after receiving a $50,000 payment from USAA, she has not argued on appeal that the setoff was erroneous. Moreover, such a result is consistent with RCW 48.22.030(6) and *Doyle v. State Farm Ins. Co.*, 61 Wn. App. at 642; *Furlong v. Farmers Ins. Co.*, 44 Wn. App. 458, 721 P.2d 1010, *review denied*, 107 Wn.2d 1017 (1986).

In sum, RCW 48.22.030(5) does not lend itself to the interpretation argued by Grimstad-Hardy. We find the statute allows insurers to limit stacking of both "per person" and "per accident" liability coverage. In addition, the policy language itself prohibits stacking of coverage. Although the policy is not a model of clarity and could have been more precisely crafted, the apparent ambiguities of isolated clauses are clarified when the provisions are properly read in conjunction with one another. Similarly, the limitation of liability for "per person" and "per accident" coverage is unambiguous when read in conjunction with the coverage page.

We affirm.

PEKELIS, A.C.J., and FORREST, J., concur.

Review denied at 123 Wn.2d 1017 (1994).

---

[9]*See also Taylor v. Aetna Cas. & Sur. Co.*, 867 F.2d at 706; *Tri-State Ins. Co. v. De Gooyer*, 379 N.W.2d at 17, in which the limit of liability provisions refer solely to "each accident" limitations but refer the reader to the declarations pages for the "per person" amounts on each vehicle without the use of "subject to" language.